## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:06CV00406 (HHK) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Judicial Watch, Inc., by counsel, hereby submits its opposition to Defendant U.S.

Department of Justice's ("DOJ's") Motion for Summary Judgment.  As grounds therefor,

Plaintiff states as follows:

## MEMORANDUM OF LAW

### I.    INTRODUCTION.

This case concerns a Freedom of Information Act ("FOIA") request sent by Plaintiff on

January 6, 2006 to Defendant DOJ.  Plaintiff's FOIA request sought documents concerning the

following:

1.    Any and all legal opinion(s) and/or memorandum(a) regarding the authorization by President George W. Bush for the National Security Agency (hereafter "NSA") to monitor domestic communications without court-approved warrants, referenced in the attached *New York Times* story.

2.    A presidential order signed in 2002 allowing and/or instructing the NSA to monitor domestic communications without court-approved warrants, referenced in the attached *New York Times* story.

*See* Exhibit 1.

Plaintiff filed this lawsuit on March 6, 2006 after Defendant failed to respond in full to Plaintiff's request, despite the fact that Defendant had granted expedited processing of the request shortly after it had been received.  After several productions between June and October of 2006, Defendant eventually completed its response.  Thereafter, the parties  attempted to narrow the issues that remained in the case.  As a result of these negotiations, Plaintiff agreed not to challenge the scope of Defendant's search for responsive records or Defendant's withholdings of classified documents.  Thus, the remaining documents at issue consist of 294 unclassified documents totaling approximately 4,760 pages.  Defendant seeks to withhold these pages under FOIA Exemption 5.  *See* Defendant's Motion for Summary Judgment ("Def. Mot.") at 4.  The vast majority of these documents are being withheld pursuant to the deliberative process privilege and attorney work product doctrine.  *Id.*  However, Defendant also is withholding 3 documents pursuant to the presidential communications privilege.  *Id.* at 4-5.

## II.    ARGUMENT.

### A.    Summary Judgment Framework.

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v.  Liberty Lobby, Inc.*, 477 U.S. 242 (1986); Fed.R.Civ.P. 56 (c).  In reviewing a motion for summary judgment under FOIA, the Court must view the facts in the light most favorable to the requestor.  *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  For a defendant to prevail, it must "prove that each document that falls within the class requested either has been produced, is

unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

**B.    The Freedom of Information Act and Exemptions.**

FOIA provides a framework of liberal disclosure for agency records and "provides that all documents are available to the public unless specifically exempted by the Act itself." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) (footnote omitted). Exemptions from disclosure "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Id.*

Where the government asserts that a record is exempt from disclosure, "the court shall determine the matter *de novo* and the burden is on the agency to sustain its action." 5 U.S.C. § 552 (a)(4)(B); *U.S. Department of Justice v. Landano*, 508 U.S. 165, 171 (1993). A responsive record must be disclosed except where the government meets its burden of showing that the record fits within one of the specific exemptions. *King v. U.S. Department of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).

The most common device used by agencies to attempt to meet this burden is the *Vaughn* Index. *Vaughn*, 484 F.2d at 826-28. *Vaughn* made clear that "courts will simply no longer accept conclusory and generalized allegations of exemptions." *Id.* at 826. *Vaughn* thus requires that an agency seeking to withhold responsive records under claims of exemption must file a declaration or index that provides a "detailed justification" and "[s]pecificity, [s]eparation, and [i]ndexing" of its claimed exemptions. *Id.* at 826-27.

Where an agency attempts to meet its burden by filing a *Vaughn* Index, the index must be sufficiently detailed and divided into manageable segments. *Davin v. U.S. Department of*

3

*Justice*, 60 F.3d 1043, 1065 (3d Cir. 1995); *Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979);

*Goland*, 607 F.2d at 364, 65.  The description must enable the requestor and the court "to derive

from the index a clear explanation of why each document or portion of a document withheld"

should be exempt from disclosure.  *Mead Data Center v. U.S. Department of the Air Force,* 566

F.2d 242, 251 (D.C. Cir. 1977).  Further, the *Vaughn* Index must indicate that any reasonably

segregable information has been disclosed.  5 U.S.C. §552(b); *see also Allen v. CIA,* 636 F.2d

1287, 1293 (D.C. Cir. 1980).

### C.    Defendant Has Failed to Meet Its Burden of Withholding Records <u>Pursuant to Exemption 5.</u>

This court has provided a detailed roadmap for the parties to follow when determining

whether an agency has properly withheld documents pursuant to FOIA exemption 5, in *Judicial

Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252 (D.D.C. 2004 Kennedy, J).  Plaintiff's

review of Defendant's motion, Vaughn index, and affidavits reveals that, in many cases,

Defendant has not met this Court's requirements for withholding the documents at issue and that

the documents should therefore be released to Plaintiff.  At the very least, Defendant should be

ordered to provide a revised Vaughn Index and/or affidavits, setting forth a more detailed

explanation of its claims of exemption than it has provided thus far.

### 1.    The Deliberative Process Privilege.

To invoke the deliberative process privilege, an agency must show that an allegedly

exempt document is both predecisional and deliberative.  *Judicial Watch, Inc.*, 297 F. Supp. 2d at

259. A predecisional document is one that is antecedent to the adoption of agency policy.  *Id.*

Beyond this, an agency must also either pinpoint an agency decision or policy to which the

document contributed or identify a decision-making process to which the document contributed. *Id.*

A deliberative document is one that is a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. *Id.* While the purpose of the deliberative process privilege is to prevent injury to agency decision making, such injury cannot simply be presumed. The agency must identify the role of a contested document in a specific deliberative process in order to show, by specific and detailed proof, that disclosure of the document would defeat, rather than further, the purposes of FOIA. *Id.* And, since the application of the deliberative process privilege depends on the content of each document and the role it played in the decision making process, an agency's affidavit must state facts in or about each withheld document and show how these facts require the document be withheld. *Id.* at 259-60.

Similarly, the agency must indicate whether information claimed under the deliberative process privilege has ever been exposed to third parties. If the requested information was ever used by the agency in its dealings with the public or adopted as an agency's position on an issue, the privilege does not apply. *Id.* at 261.

Finally, merely factual material is not exempt from disclosure unless the agency can show that the facts contained in such documents are arranged or dealt with in a way that they would reveal the policy judgments of the author and thus the agency's deliberative process. *Id.* at 261-62.

i.    Internal Communications Documents.

By far the largest category of documents that remain at issue in this case are the 142

documents[1] described in Defendant's motion as internal communications regarding the

preparation of the "White Paper" or addressing other substantive legal analysis about the

Terrorist Surveillance Program ("TSP").  Def. Motion at 11.  Most of these documents are being

withheld under the deliberative process privilege and/or attorney work product doctrine.

However, 10 of them are being withheld pursuant to the deliberative process privilege only.[2]

Many of the descriptions of the documents provided in the Bradley *Vaughn* Index are not

sufficient for Plaintiff or the Court to determine what role these documents played in the decision

making process and how their release could harm that process.  A review of the document

addressed by the Kovakas declaration, the withholding of which Plaintiff does not challenge,

illustrates these shortcomings of Defendant's other descriptions.  The Kovakas declaration

describes the withheld document as an "electronic communication dated January 13, 2006 from

Carl Nichols, Deputy Assistant Attorney General of the Civil Division, to an attorney in the

Office of Legal Counsel and attorneys in other offices of the Department," and then lists those

other offices.  Kovakas Declaration at ¶ 7.  It then states that the e-mail "consists of four

---

[1]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 22, 30, 36, 42, 43, 44, 45, 46, 50, 51, 53, 54, 55, 57, 60, 61, 64, 65, 71, 72, 75, 76, 78, 79, 80, 81, 85, 86, 87, 88, 94, 95, 96, 97, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 122, 123, 125, 126, 129, 139, 144, 162, 171, 172, 175, 176, 178, 179, 180, 182, 183, 184, 185, 186, 187, 188, 190, 191, 192, 193, 194, 195, 196, 197, 198, 202, 203, 204, 205, 206, 207, 208, 212, 213, 214, 215, 217, 218, 219, 220, 221, 222, 223, 224, 225, 228, 231, 232, 233, 234, 236, 237, 238, 239, 240, 241, 246, 247, 248, 250, 251, 252, 254, 255, 262, 267, 269, 271, 272, 275, 277, and 278.

[2]    *See* Bradley *Vaughn* Index document Nos. 9, 15, 77, 134, 143, 226, 256, 268, 270, 273.

6

sentences in which Mr. Nichols comments on a draft of the White Paper presenting legal authorities supporting NSA activities described by the President.  He raises a possible issue to be considered before the White paper is finalized." *Id.*  Mr. Kovakas then provides a list of employees to whom the document was circulated and the office that employs them, and asserts that the document was only circulated "within the Department of Justice." *Id.*

In contrast, descriptions of many of the documents in the Bradley *Vaughn* index are far less thorough.  For example, one category of withheld records, Documents 50, 51, 60, 64, and 76, are described merely as "Emails among/between OLC attorneys regarding preparation of White Paper." *See* Bradley *Vaughn* Index at 4-6.  Other than a general statement that the documents somehow refer to the subject matter of Plaintiff's request, this description fails to describe what specific role, if any, these documents had in any decision making process or how any harm to the decision making process could result from their release.

A second, similar category of withheld records in the Bradley *Vaughn* Index is described as internal communications regarding preparation of the Moschella letter,[3] which is a December 22, 2005 letter to members of Congress signed by William R. Moschella, Assistant Attorney General for the Office of Legislative Affairs.  Def. Motion at 11.  Defendant's description of these documents is as sparse as the first category.  Documents 55, 58, 82, 83, and 84 are described only as e-mails between attorneys at various agencies.  Bradley *Vaughn* Index at 5, 7.  Again, the description is insufficient for Plaintiff or the Court to determine what specific role

---

[3]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 12, 47, 55, 58, 82, 83, 84,140, 147, 150, 151, 153, 156, 157, 158, 164, 165, 177, 181, and 245, which are being withheld under both the deliberative process privilege and attorney work product doctrine.  It also includes documents 135, 160 and 161, which are being withheld under the deliberative process privilege only.

these documents played in any decision making process. Defendant offers no explanation as to why it could not provide a more detailed description of these documents than the Civil Division did in the Kovakas Declaration.

A third category of withheld documents is described as internal communications regarding proposed responses to congressional or press inquiries.[4] *Id.* at 11-12, n.8. The descriptions of many of these documents are even more vague. In some cases, Defendant at least identifies the news organization or Congressman to which the internal communications are meant to respond. In several cases, however, Defendant does not even supply this limited information. For example, Document 23 is described simply as "Draft responses to congressional questions." Bradley *Vaughn* Index at 2. This description fails to identify which members of Congress posed the questions, nor does it any provide any description of the questions or their general subject matter. It completely fails to identify the document's role in any specific decision making process. The same is true of Documents 229 and 230. Bradley *Vaughn* Index at 16. These documents are described as e-mails regarding "talking points for confirmation hearing." *Id.* Plaintiff is left with no clue as to the subject matter of the talking points, which hearing is being referenced or the individual seeking confirmation. Without this information, Plaintiff has no way of discerning which decision making process the documents played a role in and what harm

---

[4]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 23, 32, 33, 52, 127, 128, 136, 200, 229, 230, and 263, which are being withheld under both the deliberative process privilege and the attorney work product doctrine, Nos. 59 & 68 (*See* Sec. C-3 *infra*), which are being withheld under the deliberative process and presidential communications privilege, and Nos. 62, 63, 67, 131, 210, 211, 242, 243 and 244 which are being withheld under the deliberative process privilege only.

could result from their release.  Such information is particularly important in this instance because it is not at all obvious how an unidentified confirmation hearing relates to the TSP.

A fourth category of documents is described as internal communications concerning talking points for consideration while analyzing the legality of the TSP.  *Id.* at 11-12.[5]  Many of the document descriptions in this category are no better than the previous three.  Documents 155, 159, 163, and 168 are described simply as e-mails among attorneys regarding preparation of talking points.  Bradley *Vaughn* Index at 12.  Again, this is insufficient for Plaintiff or the Court to determine these documents' precise role in a decision making process or what harm could result from their release.

A fifth category of documents is described as internal communications regarding preparation of Attorney General or Presidential statements.  *Id.* at 11, n.8.[6]  Once again, the descriptions of these four documents are insufficient.  Defendant offers no specific information to Plaintiff or the Court about the subject matter or circumstances of the Attorney General's speech or the President's statement.  Without this information, neither Plaintiff nor the Court can

---

[5]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 1, 2, 6, 29, 48, 49, 56, 73, 74, 89, 90, 91, 92, 93, 98, 99, 100, 117, 124, 132, 133, 137, 138, 141, 142, 145, 148, 149, 153, 154, 155, 157, 159, 163, 164, 167, 168, 169, 170, 173, 174, 189, 199, 201, 209, 249, 257, 258, 259, 261, 265, and 276, which are being withheld under both the deliberative process privilege and the attorney work product doctrine. It also includes documents 14, 70, 160, 161, 166, and 227, which are being withheld under the deliberative process privilege only.

[6]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 66, 253, and 260 which are being withheld under the deliberative process privilege, and No. 130, which is being withheld under the deliberative process and presidential communications privileges.  *See* Part C. Sec. 3 for Plaintiff's discussion of the presidential communications privilege.

determine these documents' precise role in a decision making process or what harm could result from their release.

The sixth category of documents is described as internal communications regarding potential legislation.  *Id*.[7]  In this category, Defendant's description offers no information whatsoever about the nature of this "potential legislation."  Again, neither Plaintiff nor the Court has any way of knowing what decision making process these documents played a part in or what harm could result from their release.

ii.    Draft Documents.

In addition, DOJ is withholding numerous drafts of both the White Paper[8] and the Moschella letter,[9] as well as drafts of talking points,[10] Attorney General statements,[11] responses to

---

[7]    This category includes the following documents from the Bradbury *Vaughn* Index: No. 216, which is being withheld under the deliberative process privilege, and No. 266, which is being withheld under both the deliberative process privilege and the attorney work product doctrine.

[8]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 34, 35, 36, 38, 39, 41, 280 and 281, all of which are being withheld under both the deliberative process privilege and the attorney work product doctrine.

[9]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 26 and 289, both of which are being withheld under both the deliberative process privilege and the attorney work product doctrine.

[10]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 21, 27, 31, 35, 37, 279, 282, 287 and 288, which are being withheld under both the deliberative process privilege and the attorney work product doctrine, and No. 25, which is being withheld under the deliberative process privilege only.

[11]    This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 283, 286, and 292, which are being withheld under both the deliberative process privilege and the attorney work product doctrine, and No. 40, which is being withheld under the deliberative process privilege only.

press or congressional questions,[12] and draft legislation.[13]  *Id.* at 11, n.7.  This Court has clearly stated that simply calling a document a "draft," even if it is predecisional, is insufficient to withhold a document under the deliberative process privilege.  *Judicial Watch v. U.S. Postal Service*, 297 F. Supp. at 261. Yet that is precisely what Defendant does with many of the documents at issue.  For example, the description for Document 17 is simply the words "undated" and "draft legislation."  Bradbury *Vaughn* Index at 2.  Without a more detailed description of this document, neither Plaintiff or the Court has any idea what decision making process the document was involved in or, indeed, whether the draft legislation had anything to do with the TSP.

Another example is the withheld drafts of responses to press or congressional questions. The description given for Document 290 is "Draft answers to press questions," and the description for Document 291 is "Draft responses to congressional questions."  Bradbury *Vaughn* Index at 20.  Again, without even a general idea of what the questions were or who was asking them, it is impossible for Plaintiff or the Court to determine what decision making process these documents were involved in or how their release could harm that process.

With respect to all these draft documents, Plaintiff also submits that Defendant has failed to clearly state whether or not all segregable information has been released from the documents. *See* Sec. II.D. *infra.*

---

[12]     This category includes the following documents from the Bradbury *Vaughn* Index: Nos. 290 and 291.  Both documents are being withheld under both the deliberative process privilege and the attorney work product doctrine.

[13]     This category includes the following document from the Bradbury *Vaughn* Index: No. 17.  This document is being withheld under the deliberative process privilege only.

## 2.    The Attorney Work Product Doctrine.

The attorney work product doctrine protects documents prepared by attorneys, or non-attorneys supervised by attorneys, in contemplation of litigation that reveal information about an attorney's preparation and strategy relating to a client's case. *Judicial Watch, Inc.*, 297 F. Supp. 2d at 268.  Unlike the deliberative process privilege, the work product doctrine covers factual material unless the requester can show a substantial need for the requested information and that it cannot otherwise obtain it without suffering undue hardship. *Id.*  However, the protections of the document are waived if the work product is disclosed to a third party who does not share a common interest in the litigation with the primary party. *Id.*

The work product doctrine is limited in scope.  It only protects documents prepared for litigation, not every document prepared by an attorney.  An agency must supply the court with sufficient facts, either in its *Vaughn* Index or accompanying affidavits, to permit the conclusion that, in fact, specific claims had arisen and were likely to be pursued to the point of litigation by the agency. *Id.* at 268-69.

Finally, while under normal circumstances a FOIA requester is required to show that an agency has waived the work product doctrine, if an agency possesses nearly exclusive access to the facts, the burden falls on the agency to prove that the doctrine has not been waived because the requester is not in a position to prove otherwise. *Id.* at 269.

As stated above, Defendant has invoked the attorney work product doctrine to withhold in full over 200 documents.  However, Defendant's motion largely fails to identify the specific claims or litigation for which these documents allegedly were prepared.  Defendant's motion refers to ongoing litigation and directs Plaintiff and the Court to paragraph 9 of the Kovakas

Declaration. *See* Def. Mot. at 18, n.14.  However, the Kovakas Declaration only references three cases without providing case numbers or informing Plaintiff or the Court where this litigation is actually taking place.  More importantly, the Kovakas Declaration addresses only one of the over 200 documents at issue.  Likewise, the Bradbury and Baker Declarations fail to identify any specific litigation for which documents were allegedly prepared.

Even assuming the withheld documents were prepared in anticipation of litigation, Defendant's motion and declarations fail to state definitively whether these, or "substantially similar" documents were made public during the course of that litigation.  *Judicial Watch, Inc.* 297 F. Supp. 2d at 269.  As in *Judicial Watch, Inc. v. U.S. Postal Service*, because of the secrecy of the TSP, Defendant has nearly exclusive access to the facts regarding these documents and, therefore, Defendant must prove that it has not waived the doctrine.  Defendant's motion and the affidavits fail to meet this burden.  At the very least, Defendant must provide Plaintiff with additional information about the litigation for which these documents were allegedly prepared.  Only then can Plaintiff and the Court determine whether the attorney work product doctrine applies.

### 3.      The Presidential Communication Privilege.

The presidential communications privilege is a subcategory of executive privilege.  It applies to documents solicited and received by the President or his immediate advisors in the Office of the President.  *Judicial Watch, Inc. v. U.S. Department of Justice*, 365 F.3d 1108, 1123 (D.C. Cir. 2004).  The privilege is specific to the President and is broader than the deliberative process privilege in that it applies to both predecisional and post-decisional documents.  *Id*. at 1113-14.  However, the privilege may be overcome by a strong showing of need by the requester.

13

*Id.* at 1114.  In addition, the presidential communications privilege does not apply to documents

that are not solicited or received by the President or Office of the President.  *Id.*  Such documents

should be evaluated under the deliberative process privilege.  *Id.* at 1123.

> i.    Defendant Cannot Invoke The Presidential Communication
>        Privilege Because That Privilege Must Be Invoked Personally By
>        The President.

As a threshold matter, Defendant's claim of exemption over these 3 documents fails

because Defendant has not invoked the presidential communications privilege properly.  In the

relatively few cases that exist concerning the presidential communications privilege, the

President had invoked the privilege personally.  *See Nixon v. Administrator of General Services*,

433 U.S. 425 (1977); *U.S. v. Nixon*, 418 U.S. 683 (1974); *Nixon v. Sirica*, 487 F.2d 700 (D.C.

Cir. 1973).  Obviously, this was not done in the instant case.

In a recent case concerning the presidential communications privilege, *In Re Sealed Case*,

121 F.3d 729 (D.C. Cir. 1997), the President did not invoke the privilege himself, but directed

the White House Counsel to do so on his behalf.  The United States Court of Appeals for the

District of Columbia Circuit ("D.C. Circuit"), in reviewing the matter, did not decide whether the

privilege had been invoked properly because the Office of Independent Counsel had not raised

the issue on appeal.  *In Re Sealed Case*, 121 F.3d at 745 n.16.  Nonetheless, the Court cited at

least two cases clearly indicating that the privilege must be invoked personally by the President.

*Id.* (citing *Center on Corp. Responsibility, Inc. v. Shultz*, 368 F. Supp. 863, 872-73 (D.D.C. 1973)

(White House Counsel's affidavit stating that he is "authorized to say that the White House was

claiming executive privilege as to any and all tapes" and documents in White House files is

insufficient to invoke the privilege) and *U.S. v. Burr,* 25 F. Cas. 187, 192 (CC Va. 1807) (No.

14

14,694) (ruling that President Jefferson had to personally identify the passages that he deemed confidential and could not leave this determination to the U.S. Attorney)); *see also*, *Blumenthal v. Drudge*, 186 F.R.D. 236, 242 (D.D.C. 1999) ("Mr. Blumenthal acknowledges that neither he nor his counsel can invoke executive privilege. The President alone possesses this authority.")

In the context of a FOIA case, this requirement may be more relaxed. The D.C. Circuit held in *Soucie v. David,* 448 F.2d 1067, 1071 n.8 (D.C. Cir. 1971) – a FOIA case – that "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." The only authority to the contrary on this issue are two district court cases, one in this district and the other in the U.S. District Court for the Eastern District of California. *See George Lardner v. Department of Justice*, 2005 U.S. Dist. Lexis 5465 (D.C.C. March 31, 2005); *Berman v. C.I.A.*, 378 F. Supp 2d 1209 (E.D. Cal. 2005). Neither of these decisions is binding on this Court, especially in light of the clear statements on the matter by both the U.S. Supreme Court and the D.C. Circuit.

In the instant case, the presidential communication privilege is invoked in the Bradbury Declaration. Mr. Bradbury states that he is the "Acting Assistant Attorney General for the Office of Legal Counsel of the United States Department of Justice." Bradbury Dec., at ¶ 1. Mr. Bradbury invokes the presidential communications privilege in ¶¶ 6 and 26, but, not only is he obviously not the President or the White House Counsel acting pursuant to the express authorization of the President, he is not even the "head of the Defendant," *i.e.*, the Attorney General. Bradbury's declaration is insufficient to invoke the presidential communications privilege. *Soucie,* 448 F.2d at 1071 n.8.

15

          ii.      The Presidential Communications Privilege Does Not Apply To
                    Documents 59, 68, and 130.

In the event the Court rules that the President, White House Counsel, or Attorney General need not invoke the presidential communications privilege personally, Plaintiff submits that the Bradbury Declaration is too vague for Plaintiff or the Court to determine if the privilege is being invoked properly.   In *Judicial Watch, Inc. v. U.S. Department of Justice*, the D.C. Circuit recognized the danger of allowing the presidential communications privilege to be applied beyond an inner circle of close presidential advisors and asserted that the privilege needed to be "construed as narrowly as is consistent with ensuring that the confidentiality of the President's decision making process is adequately protected."  365 F.3d at 1114, 1116 (quoting *In Re Sealed Case*, 121 F.3d at 752).  However, the Bradbury Declaration describes Documents 59, 68 and 130 only as "e-mails between OLC attorneys and advisors to the President."  Bradbury Dec. at ¶26.  The *Vaughn* Index accompanying the Bradbury Declaration describes Documents 59, 68 and 130 only as e-mails "among OLC and White House attorneys" or "e-mails between White House and OLC attorneys."  It is unclear from these descriptions precisely who these attorneys and advisors are and whether they are sufficiently *senior* advisors to the President for the presidential communications privilege to apply.  Consequently, Defendant has failed to demonstrate that the privilege applies.  At a minimum, Defendant must provide additional information about these persons to enable Plaintiff and the Court to determine whether Defendant has applied the presidential communications privilege appropriately.

**D.     Defendant Has Failed To Segregate Out Information Releaseable To Plaintiff.**

FOIA clearly requires an agency to segregate out all releasable information from documents that are otherwise exempt from production. 5 U.S.C. §552(b); *see also Allen v. CIA,* 636 F.2d 1287, 1293 (D.C. Cir. 1980). In this case however, Defendant is withholding approximately 4760 pages of unclassified documents *in full* without making a clear representation as to whether all reasonably segregable information has, in fact, been segregated and released to Plaintiff. The closest Defendant comes is in the Baker Declaration. That declaration, however, covers only one of the 294 documents at issue. *See* Baker Dec. at ¶¶ 8 & 14.

Many of the withheld documents are drafts, and Defendant claims that, to the extent information in these drafts was ultimately given to the public in the final versions of these documents, it does not have to be released in draft form. *See* Def. Mot. at 13 n.13. However, because Plaintiff does not have access to these documents, there is no way for Plaintiff to be sure that information in these fully withheld draft documents is truly duplicative of what ultimately was made public. Defendant should be ordered to release any portions of draft documents that contain information ultimately released to the public in final form. At the very least, Defendant should be ordered to provide Plaintiff with a more clear statement that no further information from these documents can be segregated out and provided to Plaintiff.

17

III.    **CONCLUSION**.

For all of the foregoing reasons, Defendant's motion for summary judgment should be

denied.

Dated: March 7, 2007                           Respectfully submitted,

                                               JUDICIAL WATCH, INC.

                                               /s/ Paul J. Orfanedes
                                               D.C. Bar No. 429716
                                               Jason B. Aldrich
                                               D.C. Bar No. 495488
                                               Suite 500
                                               501 School Street, S.W.
                                               Washington, DC 20024
                                               (202) 646-5172

                                               *Attorneys for Plaintiff*

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:06CV00406 (HHK) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT
OF MATERIAL FACTS**

Plaintiff Judicial Watch, Inc. denies as a general matter that Defendant has properly

withheld the responsive records at issue pursuant to FOIA Exemption 5 because, as demonstrated

in more detail in Plaintiff's Opposition, Defendant has failed as a matter of law to carry its

burden of showing that release of these records would reveal information protected by the

deliberative process privilege, the attorney work product doctrine, or the presidential

communications privilege.  Plaintiff also denies that all reasonably segregable information has

been released to Plaintiff.  Notwithstanding Plaintiff's legal arguments, Plaintiff responds to

Defendant's statement of facts as follows:

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Undisputed.

8.      Undisputed.

9.      Undisputed.

10.      Undisputed.

11.      Undisputed.

12.      Undisputed.

13.      Undisputed.

14.      Undisputed.

15.      Undisputed.

16.      Undisputed.

17.      Undisputed.

18.      Undisputed.

Dated: March 7, 2007                     Respectfully submitted,

                                         JUDICIAL WATCH, INC.

                                         /s/ Paul J. Orfanedes
                                         D.C. Bar No. 429716
                                         Jason B. Aldrich
                                         D.C. Bar No. 495488
                                         Suite 500
                                         501 School Street, S.W.
                                         Washington, DC 20024
                                         (202) 646-5172

                                         *Attorneys for Plaintiff*

2