**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-00406 (HHK) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

In its Motion for Summary Judgment (Docket No. 9, "Def.'s Mot"), defendant demonstrated that plaintiff's request for documents relating to the Terrorist Surveillance Program ("TSP") resulted in the release of five documents and the further identification of 294 unclassified documents from three Department of Justice ("DOJ" or "Department") components, all of which were exempt from disclosure under Exemption Five of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5), and, specifically, all of which fell within the scope of the deliberative process privilege, the attorney work product doctrine, the presidential communications privilege, or some combination thereof.

Plaintiff's opposition (Docket No. 12; "Pl.'s Opp") to defendant's Motion for Summary Judgment focuses to a large extent on what plaintiff perceives as certain inadequacies in defendant's descriptive index of the documents subject to exemption under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which was offered as an exhibit to the Declaration by Acting Assistant Attorney General for the Department of Justice's Office of Legal Counsel, Steven G. Bradbury. Specifically, plaintiff identifies 28 documents from among the 294 withheld by defendants where plaintiff claims that defendant's submissions are inadequate to demonstrate the applicability of the FOIA exemption claimed under <u>Vaughn v. Rosen</u>, 484 F.2d 820, 824 (D.C. Cir. 1973). These documents are: Document Nos. 50, 51, 60, 64, & 76, <u>see</u> Pl.'s Opp. at 7; Document Nos. 55, 58, 82,

83 & 84, see id.; Document Nos. 23, 229, & 230, see id. at 8-9; Document Nos. 155, 159, 162 &

168, see id. at 9; Document Nos. 66, 130, 253, & 260, see id. at 9-10; Document Nos. 216 & 266,

see id. at 10; Document Nos. 17, 290, & 291, see id. at 11; and Document Nos. 59, 68, and 130.

See id. at 16.[1]

     As to these 28 documents, plaintiff's analysis of the purported deficiencies in defendant's

submissions suffers from two fundamental flaws. First, plaintiff fails to take account of the detailed

explanations for withholding contained in the Declaration of Mr. Bradbury and in the Declaration

of James A. Baker, the former Counsel for the Department's Office of Intelligence Policy and

Review ("OIPR"). Second, plaintiff fails to acknowledge the controlling principle of law, which is

that defendant's descriptions need be — and, in fact, are — sufficient for the Court to determine that

the withheld documents logically fall within the domain of the exemptions claimed. Plaintiff's

objections, accordingly, provide no basis on which to deny defendant summary judgment.

     Plaintiff's legal arguments are similarly deficient. Plaintiff challenges the withholding of all

of the draft documents, see Def.'s Mot. at 11 n.7, claiming that defendant has failed to release all

segregable information. See Pl.'s Opp. at 11. As explained herein, this is false. Plaintiff also

challenges the withholding of documents under the attorney work product doctrine, see Def.'s Mot.

at 16-18, claiming that defendant has failed to identify the particular litigation for which the

documents were prepared and has failed to identify whether any of these documents have been made

public. Pl.'s Opp. at 12-13. In making these arguments, as explained further herein, plaintiff

misconstrues the law. Plaintiff also argues that the presidential communications privilege has not

been properly invoked because it was not personally asserted by the President. That argument,

however, was squarely rejected by this Court in Lardner v. U.S. Dept. of Justice, 2005 WL 758267

(D.D.C. 2005) (Bates, J.), the reasoning of which is fully applicable here. None of these challenges,

---

[1] Plaintiff challenges the withholding of Document No. 130 under both the deliberative
process privilege and the presidential communications privilege.

accordingly, is sufficient to defeat defendant's claim to summary judgment.

Apart from the handful of documents where plaintiff challenges the adequacy of defendant's Vaughn submissions, and the three generic challenges set forth above, plaintiff does not challenge the adequacy of defendant's Vaughn submission as to any other document, and makes no argument in opposition to defendant's request for summary judgment as to its processing of these documents. Indeed, plaintiff concedes explicitly that it does not challenge the withholding of the one document identified by the Civil Division. Pl.'s Opp. at 6. As to that document and that component, accordingly, defendant is entitled to summary judgment.

In addition, while plaintiff challenges the withholding of Documents Nos. 50, 51, 60, 64, and 76 (internal communications regarding the preparation of the White Paper), see Pl.'s Opp. at 7; but see infra at 7-9, plaintiff does not identify any specific challenge to the adequacy of the Vaughn submissions supporting the propriety of withholding the bulk of the other documents that fall within this category.[2] Similarly, although plaintiff specifically identifies Document Nos. 55, 58, 82, 83, and 84 (internal communications concerning the preparation of the December 22, 2005, letter from then Acting Assistant Attorney General William P. Moschella to various members of Congress) as documents where defendant has allegedly insufficiently justified the withholding, see Pl.'s Opp. at 7-8; but see infra at 7-9, it does not make any mention of the remainder of the documents relating to the preparation of Mr. Moschella's letter.[3] In the same vein, several of plaintiff's remaining

---

[2] Document Nos. 9, 15, 22, 28, 30, 36, 42, 43, 44, 45, 46, 53, 54, 55, 57, 61, 65, 71, 72, 75, 77, 78, 79, 80, 81, 85, 86, 87, 88, 94, 95, 96, 97, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 122, 123, 125, 126, 129, 134, 139, 143, 144, 162, 171, 172, 175, 176, 178, 179, 180, 182, 183, 184, 185, 186, 187, 188, 190, 191, 192, 193, 194, 195, 196, 197, 198, 202, 203, 204, 205, 206, 207, 208, 212, 213, 214, 215, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 228, 231, 232, 233, 234, 236, 237, 238, 239, 240, 241, 246, 247, 248, 250, 251, 252, 254, 255, 256, 262, 267, 268, 269, 270, 271, 272, 273, 275, 277, 278; and the document withheld by OIPR. See Def.'s Mot. at 11 n.8

[3] Document Nos. 12, 47, 55, 58, 82, 83, 84, 135, 140, 147, 150, 151, 153, 156, 157, 158, 160, 161, 164, 165, 177, 181, and 245. See Def.'s Mot. at 11 n.8

challenges identify only a few alleged deficiencies in the <u>Vaughn</u> submissions, but make no mention

of the remainder of the withheld documents within the categories plaintiff discusses.[4] Thus, as to

these documents, defendant's motion for summary judgment should be considered unopposed.

Finally, plaintiff makes no reference whatsoever to Document Nos. 69 and 235 (internal

communications regarding the preparation of a <u>USA Today</u> published by former Associate Attorney

General Robert McCallum); Document Nos. 16, 24, 146, 152, 264, 270, and 274 (documents

conveying attorney views regarding the TSP for consideration during the process of analyzing the

legality of the TSP); or Document Nos. 3, 4, 5, 7, 8, 10, 11, 13, 16, 18, 19, 20, 28, 30, 31, 34, 35,

40, 41, 75, 110, 228, 233, 248, 277, 278, 284 (all reflecting attorney notes, annotations, and/or

marginalia), or to these categories of documents.  <u>See</u> Def.'s Mot. at 11-12, n. 8, 9 & 10.  Plaintiff

similarly makes no reference to defendant's determination to withhold items such as the names of

third-party individuals (non-government employees) and OLC and other government agency staff,

as well as their personal information, such as addresses (including email addresses), home telephone

numbers, or cellular phone numbers under Exemption Six, 5 U.S.C. § 552(b)(6), which protects

information that cannot be disclosed without resulting in an unwarranted invasion of personal

privacy.  <u>See</u> Def.'s Mot. at 7 n. 6; Bradbury Decl. ¶ 27.  Defendant's request for summary judgment

as to these documents and information, accordingly, is wholly uncontradicted.

---

[4]    Thus, while plaintiff, in its third challenge, identifies concerns with defendant's submissions in support of its withholding of Document Nos. 23, 229, and 230 (internal communications concerning proposed responses to congressional or press inquiries), <u>see</u> Pl.'s Opp. at 8, <u>but see infra</u> at 9, plaintiff makes no specific challenge to the <u>Vaughn</u> submissions made in support of the withholding of Document Nos. 32, 33, 52, 59, 62, 63, 67, 68, 127, 128, 131, 136, 200, 210, 242, 243, 244, and 263.  <u>See</u> Def.'s Mot. at 11-12 n. 8.  As to plaintiff's fourth challenge, plaintiff's concerns regarding the adequacy of the <u>Vaughn</u> index are limited to Document Nos. 155, 159, 163, and 168 (internal communications regarding talking points), <u>see</u> Pl.'s Opp. at 9; <u>but see infra</u> at 10-11; plaintiff makes no complaint as to the remainder of the documents in this category, <u>i.e.</u>, Document Nos. 1, 2, 6, 14, 29, 48, 49, 56, 70, 73, 74, 89, 90, 91, 92, 93, 98, 99, 100, 117, 124, 132, 133, 137, 138, 141, 142, 145, 148, 149, 153, 154, 157, 160, 161, 164, 166, 167, 169, 170, 173, 174, 189, 199, 201, 209, 227, 249, 257, 258, 259, 261, 265, and 276.  <u>See</u> Def's Mot. at 11n.8.

**ARGUMENT**

Under FOIA, a federal agency withholding documents is required to provide "a relatively detailed analysis" of the withheld material "in manageable segments," without resort to "conclusory and generalized allegations of exemption." <u>Vaughn</u>, 484 F.2d at 824. As courts have repeatedly noted, "it is the function, not the form, of the [submission] that is important." <u>Judicial Watch, Inc. v. FDA</u>, 449 F.3d 141, 146 (D.C. Cir. 2006) (citing <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987)); <u>see</u> <u>also</u> <u>Gallant v. NLRB</u>, 26 F.3d 168, 173 (D.C. Cir. 1994) ("[t]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege").

The touchstone for the adequacy of submissions made in support of an agency's motion for summary judgment in a FOIA case is if the submissions are specific enough to demonstrate "that material withheld is logically within the domain of the exemption claimed." <u>King v. U.S. Dept. of Justice</u>, 830 F.2d 210, 217 (D.C. Cir. 1987); <u>see</u> <u>also</u> <u>Oglesby v. U.S. Dept. of the Army</u>, 79 F.3d 1172, 1178 (D.C. Cir. 1996) ("If an affidavit submitted by an agency contains sufficient detail to forge the 'logical connection between the information [withheld] and the claimed exemption,' . . . then the court will accord that affidavit substantial weight and consider the agency's "unique insights into what adverse effects might occur as a result of public disclosure") (citation omitted).

Whether any particular submission is sufficiently specific to demonstrate that material withheld is "logically within the domain of the exemption claimed," <u>King</u>, 830 F.2d at 217, will differ depending "upon the nature of the case, the documents at issue, and the exemption claimed." <u>Ferranti v. Bur. of Alcohol, Tobacco, & Firearms</u>, 177 F. Supp. 2d 41, 45-46 (D.D.C. 2001) (Lamberth, J.). Thus, as the Court of Appeals recently held, "context dictates [the court's] approach to the particularity required of agencies." <u>Judicial Watch</u>, 449 F.3d at 147. For example, with respect to documents withheld under the deliberative process privilege encompassed within FOIA's

Exemption Five, courts have recognized that "the key question" is "[to] focus less on the nature of the materials sought and more on the effect of the materials' release," i.e., "whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Dudman Comm. Corp. v. Dept. of Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

In recently addressing the sufficiency of an agency's showing in support of summary judgment in FOIA cases, the Court of Appeals has articulated the appropriate standards to apply:

> The agency must explain why the exemption applies to the document or type of document withheld and may not ignore the contents of the withheld documents. . . . On the other hand, abstraction can aid court review when drawing from specific examples. We have never required repetitive, detailed explanations for each piece of withheld information     that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof. . . . Especially where the agency has disclosed and withheld a large number of documents, categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons. In such cases, particularity may actually impede court review and undermine the functions served by a Vaughn index.

Judicial Watch, 449 F.3d at 147. Thus, the Court of Appeals has specifically "permit[ted] the satisfaction of the government's burden of proof under many . . . exemptions . . . through generic, categorical showings." Maydak v. U.S. Dept. of Justice, 218 F.3d 760, 766 (D.C. Cir. 2000); see also Gallant, 26 F.3d at 173 (agency "need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document," so long as its definitions of categories are "sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied"). Thus, where an agency "explain[s] itself though commonalities, not generalities," and "tie[s] each individual document to one or more exemptions" while also "link[ing] the substance of each exemption to the documents' common elements," it has met its Vaughn obligations. Judicial Watch, 449 F.3d at 147 (emphasis in original).

As explained herein, defendant unquestionably has met the obligation to demonstrate the proper withholding of documents that fall "logically within the domain of" the deliberative process

privilege, the attorney work product doctrine, and the presidential communications privilege. Defendant, accordingly, is entitled to the entry of summary judgment on its withholdings under FOIA's Exemption Five.

## I.   DEFENDANT PROPERLY WITHHELD DOCUMENTS UNDER THE DELIBERATIVE PROCESS PRIVILEGE.

Plaintiff identifies seven specific groups of documents as to which it challenges the adequacy of defendant's submissions in support of its determination that the documents are exempt from disclosure under FOIA because they fall within the scope of the deliberative process privilege encompassed within Exemption Five. As to each of these seven groups of documents, plaintiff's arguments fail to provide any basis on which to deny defendant summary judgment.

Plaintiff's first and second challenges are to defendant's withholding of certain documents comprising internal communications (e-mails) regarding the preparation of the White Paper or other documents under the deliberative process privilege encompassed within FOIA's Exemption Five . See Pl.'s Opp. at 6-7 (discussing OLC 50, 51, 60, 64, and 76 (certain internal communications regarding preparation of the White Paper); and OLC 55, 58, 82, 83, and 84 (certain internal communications regarding preparation of the Moschella letter)). As to these ten documents, plaintiff asserts that the entries in the index provided as an exhibit to the Declaration of Steven G. Bradbury "are not sufficient for Plaintiff or the Court to determine what role these documents played in the decision making process and how their release could harm that process." See Pl.'s Opp. at 6.

Plaintiff makes these challenges, however, without crediting any of the detailed information provided in the sworn declaration of Mr. Bradbury. Thus, the documents plaintiff identifies are further described in Mr. Bradbury's declaration as follows:

> OLC and Department attorneys routinely send and receive e-mails that convey preliminary advice, analysis and reactions to a legal issue in a substantive but informal manner. Often, OLC attorneys use e-mail to engage their colleagues in "back and forth" discussions, just as they might in a face-to-face meeting or when walking down the hall. OLC e-mails, in essence, reflect a fluid and evolving

exchange of ideas.

Bradbury Decl. ¶ 18.  Specifically, "[t]he e-mails withheld in this case are characteristic of OLC e-mail use.  All the messages relate to the preparation of draft documents, and most contain commentaries on and discussions of the documents, including suggestions and opinions regarding the drafts' content; many also attach copies of drafts in progress."  Id. ¶ 19.  Thus, forcing the production of these "quintessentially deliberative and preliminary documents would impair decisionmaking by discouraging OLC attorneys from candidly and freely exchanging information and ideas with their colleagues while examining complicated legal issues."  Id.

As Mr. Bradbury describes in detail, following the unauthorized public disclosure of the TSP by The New York Times and the President's subsequent acknowledgment of the program, "OLC attorneys  many of whom were previously unaware of the TSP's existence  created a number of documents analyzing, explaining, and defending the TSP's legality.  In particular, [OLC] attempted to identify and articulate the most relevant legal arguments respecting the TSP."  Bradbury Decl. ¶ 11.  The emails withheld by OLC were generated as part of this deliberative process of identifying and articulating the most relevant legal arguments respecting the TSP, and as Mr. Bradbury attests, each of these documents "was generated or received" by OLC in its "advisory role"; "each document is non-final and predecisional"; and "each reflects internal deliberations among OLC attorneys and other Executive Branch attorneys."  Id. ¶ 12.  Nothing in this comprehensive explanation of the documents withheld by OLC provides any basis for plaintiff's asserted inability to discern the reasons for their withholding.

To the contrary, these documents are properly withheld under the well-established standards applicable to FOIA's exemption of materials falling within the deliberative process privilege.  See Def.'s Mot. at 8-10.  Mr. Bradbury's description of the withheld e-mails clearly demonstrates the "logical connection," Oglesby, 79 F.3d at 1175, between internal communications regarding the

process by which OLC made decisions concerning the identification and articulation of legal arguments relating to the TSP and the deliberative process privilege encompassed within Exemption Five of FOIA. See Bradbury Decl. ¶ 12-22. Moreover, Mr. Bradbury clearly explains the harm that would be done to the deliberative process were the withheld documents to be disclosed, see id., a determination that is entitled to considerable deference. See Def.'s Mot. at 10 (citing, inter alia, Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n, 600 F. Supp. 114, 118 (D.D.C. 1984) (Oberdorfer, J.)). Thus, the withholding of Document Nos. 50, 51, 60, 64, and 76, and Nos. 55, 58, 82, 83, and 84 should be upheld.

Plaintiff's third challenge is to the justifications provided in the index for the withholding of certain internal communications regarding proposed responses to congressional or press inquiries. See Pl.'s Opp. at 8 (identifying Document Nos. 23, 229, and 230). Again, however, plaintiff has failed to consider the detailed information provided in Mr. Bradbury's declaration, to which the index is an exhibit. Specifically, Mr. Bradbury notes that "drafts of the talking points, the Moschella letter, the Attorney General's speech, editorial, and responses to potential TSP-related questions were prepared to assist senior Executive Branch officials in addressing and explaining various legal aspects of the TSP. These drafts attempt to summarize succinctly particular issues and provide important background information in a concise, summary format for ease of understanding and presentation. In preparing the drafts, the authors also attempt to anticipate and address questions that might arise about the TSP." Bradbury Decl. ¶ 16.

In particular, the three documents identified by plaintiff consist of proposed responses to congressional questions (Document No. 23), and talking points prepared for a confirmation hearing (Document Nos. 229 & 230).[5] As Mr. Bradbury explains, and as relevant case law makes clear, decisions about what might be said in response to congressional inquiries or in talking points for

---

[5] The talking points were prepared in anticipation of the Senate confirmation hearing of Deputy Attorney General Paul J. McNulty, who was confirmed in that position in early 2006.

public consumption clearly fall within the contours of the deliberative process privilege. See Krikorian v. Dept. of State, 984 F.2d 461, 466 (D.C. Cir. 1993) (decisions concerning "how the [agency] should respond to the reaction of some members of the public . . ." are protected by deliberative process privilege); Judicial Watch, Inc. v. Reno, 2001 WL 1902811, at *3 (D.D.C. 2001) (Robertson, J.) (decisions regarding "what litigation positions to adopt . . . , what position to take on possible Congressional responses . . . , and how to handle press inquiries and other public relations issues" are protected by deliberative process privilege); Hunt v. U.S. Marine Corps, 935 F. Supp. 46, 52 (D.D.C. 1996) ("point papers" prepared in the "midst of [agency's] deliberative process to assist officers in their formulation of a final decision" exempt from disclosure); Klunzinger v. IRS, 27 F. Supp. 2d 1015, 1026-27 (W.D. Mich. 1998) (briefing paper for Commissioner exempt).

It is irrelevant to the determination of whether the privilege applies who asked the questions to which responses were being prepared, but see Pl.'s Opp. at 8 and indeed, proposed responses of this kind would be properly withheld as deliberative regardless of whether an actual entity or person sought an answer or whether, instead, the Department was attempting to anticipate potential questions and prepare appropriate responses. The deliberative process to be protected is the process of drafting an answer, a process which reflects the personal opinions and suggestions of all those who provide input in an effort to achieve a proposed response for the Department as a whole. As the cases cited above demonstrate, the documents withheld here clearly implicate that process.[6]

---

[6] Plaintiff's repeated assertion that it is unable to determine the "subject matter" of the documents withheld is highly disingenuous. See Pl.'s Opp. at 8 (complaining that plaintiff is unable to determine the "subject matter of the talking points"); id. at 9 (complaining that plaintiff is unable to determine "the subject matter . . . of the Attorney General's speech or the President's statement"); id. at 10 (complaining that plaintiff is unable to determine "the nature of . . . 'potential legislation'"). Plaintiff sought documents concerning the authority of the National Security Agency to target for interception international communications into and out of the United States of persons linked to al Qaeda or related terrorist organizations, a program known as the Terrorist Surveillance Program, or the TSP. See Bradbury Decl. ¶ 2. All of the documents withheld by defendant, obviously, were responsive to plaintiff's specific requests for information on this topic.

Plaintiff's fourth challenge is to the withholding of Document Nos. 155, 159, 163, and 168, which are internal communications concerning the preparation of talking points regarding the legality of the TSP.  As before, plaintiff complains that defendant's description of these documents is inadequate but does so without reference to the declaration of Mr. Bradbury, which clearly describes the necessity for withholding draft talking points and internal communications concerning their preparation.  See Bradbury Decl. ¶¶ 16-17.  Determining what the Department might say publicly in response to questions concerning the TSP's legality was one of the most critical decisions made after the existence of the program was revealed by the unauthorized publication of classified information in The New York Times.  See id. ¶ 11.  The process of drafting talking points concerning what should and should not be said is plainly a deliberative process, as the cases cited above demonstrate.  See, e.g., Judicial Watch, 2001 WL 1902811, at *3; Krikorian, 984 F.2d at 466.

Plaintiff's fifth challenge to the withholding of Document Nos. 66, 130, 253, and 260, fails for similar reasons.  Plaintiff contends that absent specific information about the "subject matter or circumstances of the Attorney General's speech or the President's statement," it is not possible to assess the application of the deliberative process privilege.  This is false.  Internal communications regarding the content to be included in speeches by either the Attorney General or the President are clearly privileged regardless of the actual content of the speeches or, indeed, regardless of whether the speech in question was ever delivered.[7]  The deliberative process at play, as defendant's descriptions make abundantly clear, is the internal deliberation regarding what would be said in these statements, see Bradbury Decl. ¶ 16; to release documents that would reveal the factors and

---

[7]  Although not relevant, both the President's December 19, 2005, Statement, and the Attorney General's January 24, 2006, speech, were well publicized and are publicly available.  See http://www.whitehouse.gov/news/releases/2005/12/20051219-2.html (Press Conference of the President, December 19, 2005); http://www.usdoj.gov/ag/readingroom/surveillance.htm (Prepared Remarks for Attorney General Alberto R. Gonzales at the Georgetown University Law Center, January 24, 2006).

suggestions that went into that decisionmaking process would clearly, as Mr. Bradbury attests, "cause serious harm to the deliberative process of the Department of Justice and the Executive Branch and would disrupt the relationship between the Department and the President and other officers in the Executive Branch." Bradbury Decl. ¶ 22. This is because "[i]t is essential to the mission of the Executive Branch that OLC's legal advice, and the development of that advice, not be inhibited by concerns about public disclosure. Protecting the confidentiality of these documents is essential in order to ensure that creative and even controversial legal arguments and theories may be explored candidly, effectively, and in writing, as well as to ensure that Executive Branch officials will continue to request OLC's legal views on sensitive matters." Id.

Plaintiff's sixth challenge is equally specious. See Pl.'s Opp. at 10. The documents withheld as internal communications concerning potential legislation clearly reflect the deliberative processes of the Department. The first document withheld is Document No. 216, an email message between attorneys in the Office of Legal Counsel and attorneys in the Office of Legislative Affairs concerning the status of potential legislation, while the second, Document No. 266, is an email communication between attorneys in the Office of Legal Counsel and attorneys in the Office of Intelligence Policy and Review concerning proposed legislation. In both cases, these internal communications reflect ongoing discussions within the Department of Justice concerning the most appropriate way to respond to the various expressions of congressional concern that resulted from the unauthorized disclosure of the existence of the TSP, and the internal deliberations concerning this topic are clearly privileged. See Bradbury Decl. ¶ 11-12.

Finally, plaintiff's seventh challenge relates to drafts withheld by defendant. Plaintiff first suggests that defendant has done no more than identify the withheld documents as drafts, and that this is insufficient to meet defendant's burden of demonstrating their proper withholding. See Pl.'s Opp. at 10-11. This assertion is false, and again, plaintiff fails to credit, or even reference, the

detailed explanation provided in the declaration of Mr. Bradbury which advances the justifications

for protecting the drafts withheld by defendant.  Specifically, as Mr. Bradbury describes,

> [c]reating drafts is an integral part of the deliberations within OLC, the Department,
> and the Executive Branch.  Through the writing process, OLC attorneys focus,
> articulate, and refine their advice and analysis.  Drafts do not represent the final
> position or ultimate views of the Office, the Department, or the Executive Branch.
> To the contrary, drafts are, by their very nature, pre-decisional and deliberative.  They
> are part of the exchange of ideas and suggestions that accompanies all
> decisionmaking, and they reflect the preliminary assessments and suggestions of
> OLC attorneys.

Bradbury Decl. ¶ 14; see also Def.'s Mot. at 13 (citing cases).

 As described above, and as Mr. Bradbury further explains, following the unauthorized public

disclosure of the Terrorist Surveillance Program ("TSP") by The New York Times, "OLC attorneys

. . . created a number of documents analyzing, explaining, and defending the TSP's legality.  In

particular, [OLC] attempted to identify and articulate the most relevant legal arguments respecting

the TSP."  Bradbury Decl. ¶ 11.  All of the drafts withheld by defendant were a part of that

deliberative process, i.e., the process by which the Department adopted a final position    reflected

in the publicly-released White Paper    as to the most relevant legal arguments respecting the TSP.

The withheld drafts were an integral part of this process, and, as Mr. Bradbury concludes,

"[c]ompelled disclosure of these non-public, pre-decisional, and deliberative draft documents would

seriously inhibit and hinder the internal deliberations and frank discussions among OLC attorneys

that are critical for providing candid and direct advice to the Executive Branch."  Id. ¶ 17.

Plaintiffs also complain that, as to all of the draft documents, defendant has failed to establish

that no material might be usefully segregated.  This claim is belied by the nature of the documents

withheld.  As a preliminary matter, it is important to note that with three exceptions (Document Nos.

17, 25, & 40), all of the draft documents withheld under the deliberative process privilege are also

withheld under the attorney work product doctrine.  See Bradbury Decl. Ex. E; see also infra at 15-

18.  Because the work product doctrine serves to protect interests essential to the administration of

justice, the Court of Appeals has specifically instructed that "the doctrine should be interpreted broadly and held largely inviolate." Judicial Watch, Inc. v. Dept. of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005).  Thus, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." Id. (citation omitted).  There is, accordingly, no obligation to segregate documents falling within the terms of the attorney work product doctrine prior to withholding them under FOIA.  See id. ("If a document is fully protected as work product, then segregability is not required").

In addition, as Mr. Bradbury explains, "the draft documents consist of drafts of various documents discussing the TSP and its legality," Bradbury Decl. ¶ 13, and were part of an effort to "analyz[e], explain[], and defend[] the TSP's legality." Id. ¶ 11.  The TSP is a "highly classified signals intelligence program," as to which only a few facts have been publicly disclosed.[8]  The withheld documents, accordingly, all of which are unclassified, overwhelmingly reflect Department deliberations concerning legal arguments in support of the Program, not factual material. See Bradbury Decl. ¶¶ 9-11; 13-17.  These sorts of deliberations do not lend themselves to segregation.  As Mr. Bradbury explains, "comparing the final copy against the prior drafts would, inevitably reveal changes and revisions made by the OLC and the Department during the deliberative process." Bradbury Decl. ¶ 16; see Dudman,  815 F.2d at 1568 (finding Exemption Five applicable to prevent disclosure of a draft because "the disclosure of editorial judgments    for example, decisions to insert or delete material or to change a draft's focus or emphasis    would stifle [] creative thinking and candid exchange of ideas . . . . Release of [the draft] would disclose the alterations that the [agency], in its entirety, made during the process of compiling the [document]").

Plaintiff's concern that segregable information has not been released is further belied by the

---

[8]  Indeed, it is important to note that plaintiff did not seek factual material, but rather "legal opinions and/or memorandum(a)." See Pl.'s Opp. at 1; cf. Dudman, 815 F.2d at 1568.

fact that for virtually every draft that was withheld, and as to which internal communications concerning the drafts were also withheld, a final version has been released to the public and remains publicly available.  Indeed, many of these documents are available in the Department's FOIA Electronic Reading Room, which has a section dedicated to documents concerning the NSA's Terrorist Surveillance Program, http://www.usdoj.gov/ag/readingroom/surveillance.htm, including former Assistant Attorney General William P. Moschella's December 22, 2005, letter to Members of Congress; the January 19, 2006, White Paper; the Attorney General's January 24, 2006, speech at Georgetown University Law Center; and copies of press briefings and unclassified correspondence with members of Congress concerning the TSP.  To release drafts and internal communications concerning these documents would demonstrate the evolution of these documents and would undeniably "inhibit and hinder," see Bradbury Decl. ¶ 17; see also Dudman, 815 F.2d at 1568, the deliberative processes by which these documents were finalized and transformed from a collection of suggestions by individual employees into a final product that stands as the publicly articulated position of the Department.

In sum, plaintiff offers no valid basis to question defendant's assertion that the withheld documents falls squarely within the domain of the deliberative process privilege.  Defendant's withholding of documents under Exemption Five of FOIA, accordingly, must be upheld.

## II.    DOJ PROPERLY WITHHELD DOCUMENTS UNDER THE ATTORNEY WORK PRODUCT DOCTRINE.

Plaintiff contests defendant's assertion of the applicability of the attorney work product doctrine because it claims that defendant has failed to "identify the specific claims or litigation for which these documents were allegedly prepared."  Pl.'s Opp. at 12.  Plaintiff's argument in this regard misconstrues the law.  Defendant is not required to have prepared documents for any particular litigation in order for the doctrine to be applicable.  To the contrary, the doctrine is applicable where documents were prepared "in anticipation of foreseeable litigation, even if no specific claim is

contemplated." Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992). Indeed, as the Court of Appeals has clearly stated, "It is often prior to the emergence of specific claims that lawyers are best equipped to help clients avoid litigation or to strengthen available defenses should litigation occur. . . ." In re Sealed Case, 146 F.3d 881, 886 (D.C. Cir. 1998).

Both the declarations of Mr. Bradbury and Mr. Baker plainly establish that the withheld documents were created in anticipation of litigation.[9] As Mr. Bradbury explains, "after public disclosure of the TSP by the New York Times . . . OLC and the Department immediately expected that . . . third-parties would likely file lawsuits challenging the program. Consequently, OLC attorneys drafted, reviewed and deliberated on these documents not only with the goal of articulating arguments in support of the TSP's legality, but also in contemplation of anticipated litigation." Bradbury Decl. ¶ 24; see also Baker Decl. ¶ 13.[10]

Nor is it correct to argue that defendant bears the burden of demonstrating that it has waived

---

[9]  The criticism by plaintiff addressed in this section is the only specific complaint plaintiff raises with respect to the document withheld by OIPR, described in the Declaration of Mr. Baker. In particular, plaintiff makes no specific complaint concerning Mr. Baker's explanation that the one document withheld by OIPR was properly subject to withholding under the deliberative process privilege.  See Baker Decl. ¶¶ 9-12.

[10]  The litigation anticipated by Mr. Bradbury, Mr. Baker, and others in the Department quickly came to pass. Indeed, the federal litigation spawned by the disclosure of the TSP is of such magnitude that many cases have been transferred and consolidated pursuant to orders of the Judicial Panel on Multidistrict Litigation before a single judge in the United States District Court for the Northern District of California, In re National Security Agency Telecommunications Records Litigation, Civil No. 06-01791 (N.D. Cal.). The pending litigation includes six civil lawsuits filed against the Government   Al-Haramain Islamic Foundation, Inc. v. George W. Bush, Civil No. 07-00109 (N.D. Cal.), appeal docketed, No. 06-36083 (9th Cir.); American Civil Liberties Union v. National Security Agency, No. 06-10204 (E.D. Mich.), appeal pending, Nos. 06-2095, 06-2140 (6th Cir.); Center for Constitutional Rights v. George W. Bush, Civil No. 07-01115 (N.D. Cal.); Guzzi v. George W. Bush, Civil No. 06-06225 (N.D. Cal.); Shubert v. George W. Bush, 07-00693 (N.D. Cal.); and Tooley v. George W. Bush, 06-00306 (D.D.C.), appeal docketed, 07-5080 (D.C. Cir.) as well as more than 40 cases filed by third parties against private telecommunications companies involving allegations concerning the TSP and alleged related activities, and several cases involving State regulatory agencies seeking to require private telecommunications companies to disclose classified information about their alleged assistance to the National Security Agency.

the work product doctrine. See Pl.'s Opp. at 12-13. As a preliminary matter, Mr. Bradbury specifically attests that the draft documents being withheld have not been shared outside the Executive Branch. See Bradbury Decl. ¶ 17 ("none of the draft documents withheld by OLC are, to my knowledge, public, and all were prepared with the expectation that they would be held in confidence"). Apart from the drafts, the remainder of the withheld documents are internal communications (usually emails) amongst Department personnel or handwritten notes or marginalia by attorneys within OLC. See Bradbury Decl. ¶ 12; see also Baker Decl. ¶ 13. All of the withheld documents, moreover, are "non-final and pre-decisional; and each reflects internal deliberations among OLC attorneys and other Executive Branch attorneys." Bradbury Decl. ¶ 12; see also Baker Decl. ¶¶ 10-13. There is simply no basis, accordingly, for plaintiff's speculation that these internal, predecisional, and draft documents, or "substantially similar" documents, were made public during the course of litigation, see Pl.'s Opp. at 13, and there is equally no basis for plaintiff's speculation that the attorney work product doctrine has been waived. See Public Citizen v. Dept. of State, 276 F.3d 634, 645 (D.C. Cir. 2002) (speculation insufficient to demonstrate prior disclosure).

In any event, as plaintiff itself admits, see Pl.'s Opp. at 12, it is normally the case that a FOIA requester is required to demonstrate that there has been a prior disclosure. See Afshar v. Dept. of State, 702 F.2d 1125, 1129 (D.C. Cir.1983) ("a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld"); Davis v. Dept. of Justice, 968 F.2d 1276, 1279 (D.C. Cir.1992) (explaining that burden of demonstrating prior disclosures is placed on the FOIA requester "because the task of proving the negative    that information has not been revealed    might require the government to undertake an exhaustive, potentially limitless, search"); accord Public Citizen, 267 F. 3d at 645. The Government's filings in the pending litigation (except where they have been made

in camera and ex parte for the Court's consideration due to the inclusion of classified materials)[11] are a matter of public record and available to the plaintiff as easily as they are to the defendant.

Plaintiff, thus, is mistaken to suggest that the burden to demonstrate no prior disclosure must shift to defendant because it has exclusive access to the facts. The only burden defendant bears has been meet by the submissions made in support of its withholding demonstrating that the documents are properly withheld because "releasing . . . non-final, pre-decisional, and deliberative documents would reveal legal arguments and analysis that the Department could present in lawsuits challenging the TSP." Bradbury Decl. ¶ 10. Accordingly, defendant is entitled to summary judgment as to its determination that the withheld documents fall within domain of the attorney work product privilege encompassed within Exemption Five.

## III. DEFENDANT HAS PROPERLY WITHHELD DOCUMENTS UNDER THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE.

### A. Plaintiff's Assertion that the President Must Personally Invoke the Presidential Communications Privilege Before Documents May Be Withheld Under Exemption Five of FOIA is Incorrect.

Plaintiff argues defendant's claim of exemption over three documents   Documents Nos. 59, 68, and 130   "fails because Defendant has not invoked the presidential communications privilege properly." Pl.'s Opp. at 14-15. This argument reflects a fundamental misunderstanding of the nature of the statutory exemptions to disclosure contained in FOIA. Formal invocation of a privilege is never a prerequisite to the proper application of a FOIA exemption because, in the FOIA context, an agency is not resisting disclosure of information in a judicial proceeding by invoking a privilege. Instead, an agency withholding documents under FOIA "simply makes the determination that a statutory provision protects the documents from disclosure." Lardner v. U.S. Dept. of Justice, 2005 WL 758267, *8. (D.D.C. 2005) (Bates, J.). Thus, "[e]ven assuming that the President must

_____

[11] As plaintiff only challenges the withholding of unclassified material, none of the classified materials filed for the Court's in camera, ex parte review in the pending litigation is of any relevance to the questions raised by defendant's motion.

personally invoke the presidential communications privilege in civil discovery,"[12] as Judge Bates of this Court recognized in his opinion in Lardner,"this rule should not be imported into the far different context of FOIA."  Id. at *6; accord Berman v. CIA, 378 F. Supp. 2d 1209, 1220 (E.D. Cal. 2005).

As Judge Bates comprehensively explained in Lardner, this is so for three reasons.  First, the rules that govern ordinary discovery proceedings are not generally imported into FOIA.  For example, although an individualized showing of need can overcome the assertion of a qualified privilege in civil discovery, this is not the case in FOIA; to the contrary, material that is "routinely" or "normally" protected from disclosure in litigation, see Dept. of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7-8 (2001), is exempt from disclosure under FOIA regardless of any showing of need.  See Lardner, 2005 WL 758267, at *6-7 (discussing FTC v. Grolier, Inc., 462 U.S. 19 (1983)).  Similarly, other privileges which must be invoked by high-level officials in ordinary civil litigation do not require similar procedures under FOIA.  See Lardner, 2005 WL 758267, at *8 & n. 15 (noting that "although the deliberative process privilege requires invocation by a high-level agency official in civil discovery, . . . no court has ever indicated that such an official must make the determination that a documents comes within Exemption 5" and citing cases); id. at *9 n.17; compare United States v. Reynolds, 345 U.S. 1, 7-8 (1953) (requiring the "head of the department" to invoke the state secrets privilege in order to protect classified information from disclosure in civil litigation) with 5 U.S.C. § 552(b)(1) (exempting information from disclosure under FOIA so long as it is currently and properly classified).  As Judge Bates concluded, "there is simply no basis in law or practice for believing that the personal invocation of a privilege is a prerequisite to withholding

---

[12]  Despite plaintiff's assertion that there have been "clear statements" on the matter from higher courts, see Pl.'s Opp. at 15, even this is by no means clear.  See Lardner, 2005 WL 758267, *6 n.10 (noting that the Court of Appeals in Judicial Watch, Inc. v. Dept. of Justice, 365 F.3d 1108, 1114 (D.C. Cir. 2004), specifically stated that "the issue of whether the President must personally invoke the privilege [in the context of civil discovery] remains an open question.").

under FOIA." Lardner, 2005 WL 758267, at *8; accord Berman, 378 F. Supp. 2d at 1220.[13]

Second, "there is no indication in the text of the statute or elsewhere that Congress anticipated — much less demanded — that the decision to withhold documents under Exemption 5 would need to be made personally by the head of the agency (in this case the President). This is not the case for any other FOIA exemption decision." Lardner, 2005 WL 758267, at *8. Thus, as Judge Bates concluded, there is "little reason to believe" that Congress intended the President, or any other high level agency official, to personally invoke the privileges encompassed within Exemption Five in order for documents to be withheld under the statutory exemptions. Id. at *9.

Finally, "requiring the President of the United States to personally examine the documents at issue and then invoke the presidential communications privilege every time a citizen seeks presidential records through FOIA would expose the President to considerable burden." Lardner, 2005 WL 758267, at *9. Such a rule would "allow any requester — merely by filing a FOIA request with [a federal agency] — to encumber the President of the United States with the obligation to personally review perhaps thousands of presidential documents for privileges, and then personally invoke the privilege." Id. As Judge Bates concluded, that view of Exemption Five of FOIA "would chain the President to a stack of documents for review at the whim of a FOIA requester," and "finds no warrant in the statute, the legislative history or legal precedent." Id. at *10; see also Berman, 378 F. Supp. 2d at 1221 ("Congress would not have intended to impose such a burden, given that it

---

[13]    Plaintiff's reliance on Soucie v. David, 448 F.2d 1067 (D.C. Cir. 1971), is entirely misguided.  The Court there considered the question whether the Executive Branch could assert executive privilege to protect a document from disclosure under FOIA in lieu of establishing that the document fell within one of FOIA's statutory exemptions, and determined that the proper course of proceeding was to determine the applicability of FOIA's exemptions before determining whether personal invocation of an executive privilege might be required.  See id. at 1072 ("whether or not the Government makes a claim of privilege on remand, the court should first consider whether the Report falls within any statutory exemption").  Nothing in Soucie suggests that when evaluating the applicability of FOIA's statutory exemptions, as opposed to an outright claim of privilege, personal invocation is required, and, indeed, as Judicial Watch makes clear, Soucie does not even answer the latter question in this Circuit, as it remains "open."  365 F.3d at 1114.

specifically intended the President and his immediate staff to be immune from FOIA requests").

Plaintiff acknowledges the decisions in Lardner and Berman, see Pl.'s Opp. at 15, but asserts only that this Court need not follow these decisions, see id., without making any effort to analyze the results reached therein or to explain why the conclusions initially drawn by Judge Bates, and followed by the district court in Berman, might be incorrect or inconsistent with prevailing law. The fact of the matter is that they are neither. Thus, this Court should reaffirm, without hesitation, Judge Bates' conclusion that "the President need not personally invoke the presidential communications privilege for the government to withhold documents that fall within the ambit of the privilege under Exemption 5 of FOIA." Lardner, 2005 WL 758267, at *10.

**B.     The Presidential Communications Privilege Exempts Document Nos. 59, 68 and 130 From Disclosure.**

Plaintiff's only substantive challenge to defendant's withholding of Document Nos. 59, 68 and 130 is that Mr. Bradbury's declaration is too vague to provide a basis from which to determine that Exemption Five of FOIA allows withholding because defendant has failed to identify "who the [White House] attorneys and advisors are and whether they are sufficiently senior advisors to the President for the presidential communications privilege to apply." Pl.'s Opp. at 16.

Once again, plaintiff has misconstrued the applicable law. As the Court of Appeals explained in In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), the presidential communications privilege "extends to cover communications which do not themselves directly engage the President, provided the communications are either authored or received in response to a solicitation by presidential advisers in the course of gathering information and preparing recommendations on official matters for presentation to the President." Id. at 757. The three documents withheld by defendant clearly fall within the scope of that privilege. The documents seek Department review and comment on statements to be made by the President. See Def.'s Mot. at 20; Bradbury Decl. ¶ 20 (documents "contain advice from OLC attorneys to presidential advisers about the content of the [President's]

statement and proposed answers"). Thus, in these documents, the Department is being asked for, and provides, its input into a decision to be made personally by the President, i.e., what the President himself will say in public statements. These documents could have been transmitted by or to the lowest level administrative assistant in the White House, and they would still be subject to the presidential communications privilege because they directly implicate advice provided by the Department to the President for his decisionmaking process. See In re Sealed Case, 121 F.3d at 753 (upholding privilege assertion because "in this case there is assurance that even if the President were not a party to the communications over which the government is asserting presidential privilege, these communications nonetheless are intimately connected to his presidential decisionmaking").

As explained in defendant's opening brief, the advice of Department attorneys as part of the President's decisionmaking process cannot be disclosed without imperiling the "candor of presidential advisers" and the "freedom to explore alternatives in the process of shaping policies and making decisions . . . in a way many would be unwilling to express except privately." In re Sealed Case, 121 F.3d at 743; see Def.'s Mot. at 19-20. In such circumstances, the Department's determination that these three documents fell within the purview of the presidential communications must be upheld, and defendant is entitled to summary judgment as to its withholding of Document Nos. 58, 69, and 130 under FOIA's Exemption Five.[14]

### CONCLUSION

For the reasons stated herein and in defendant's opening motion, defendant is entitled to summary judgment as a matter of law under Federal Rule of Civil Procedure 56.

---

[14]    The three documents are also subject to withholding because they fall within the deliberative process privilege. Plaintiff, however, challenges the applicability of that privilege only as to one of the three documents, Document No. 130. See Pl.'s Opp. at 9-10; but see supra at 11-12. The withholding of Document Nos. 59 and 68 under the deliberative process privilege, accordingly, is uncontested.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch


_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593

Dated:   April 27, 2007.                          Email: rupa.bhattacharyya@usdoj.gov