IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, )<br>)<br>Defendant. )<br>_____) | C.A. No. 1:06CV00406 (HHK) |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel, hereby submits this surreply to Defendant U.S. Department of Justice's ("DOJ's") Motion for Summary Judgment.

**MEMORANDUM OF LAW**

**I.    Introduction.**

At issue in this Freedom of Information Act ("FOIA") lawsuit is Defendant's claim that FOIA's Exemption 5 authorizes it to withhold 294 unclassified records, totaling approximately 4,760 pages, regarding the government's response to public revelation of the Terrorist Surveillance Program, a matter of obvious and substantial public interest.[1]  Defendant moved for summary judgment on January 26, 2007.  Plaintiff filed its opposition on March 7, 2007.  Defendant filed a reply on April 27, 2007.  In its reply, Defendant makes several assertions that, in Plaintiff's view, mischaracterize and/or misconstrue the arguments raised by Plaintiff in its opposition.  In addition, Defendant also relies on newly presented factual information in

---

[1] Although perhaps obvious from its opposition, Plaintiff hereby confirms that it does not challenge Defendant's withholdings under Exemption 6.

purported support of its claims of exemption under the attorney work-product doctrine. Plaintiff will address each item in order.

## II. Plaintiff Challenges Nearly All of Defendant's Exemption 5 Claims.[2]

Defendant claims that Plaintiff failed to challenge many of Defendant's Exemption 5 claims in its opposition. Defendant is wrong. Rather than addressing all 294 withheld records, Plaintiff's opposition instead focused on certain examples of records that Defendant failed to describe adequately. Simply put, Plaintiff's opposition used examples to highlight shortcomings that are common to nearly all of Defendant's claims of exemption. While Plaintiff respectfully submits that its use of examples to highlight these shortcomings should have been obvious, especially because Plaintiff specifically identified each challenged record by number in the footnotes to its opposition, Plaintiff nevertheless reiterates that, with the exception of the records noted, it did not and does not waive any of its objections to Defendant's withholdings under Exemption 5.

## III. Plaintiff Did Not Ignore the Bradbury Declaration.

Defendant asserts that Plaintiff's opposition ignored the purportedly detailed information contained in the Declaration of Steven G. Bradbury ("Bradbury Declaration"). Again, Defendant is wrong. In its opposition, Plaintiff first examined the Kovakas Declaration, which addresses only one withheld record. Plaintiff then demonstrated that, unlike the Kovakas Declaration, the

---

[2] Document Nos. 3-5, 7-8, 10-11, 13, 16, 18-20, 28, and 284 are described as being marginal notations and underlinings on otherwise public documents, as well as handwritten notes. Plaintiff elects not to challenge Defendant's withholding of the following records, although Plaintiff respectfully submits Defendant has failed to demonstrate that the records are being withheld properly. Plaintiff also does not challenge Defendant's withholding of the single document described by the Declaration of James M. Kovakas ("Kovakas Declaration").

Bradbury Declaration failed to satisfy Defendant's burden with respect to its withholdings under Exemption 5. Plaintiff did so by comparing the description contained in the Kovakas Declaration with the far less detailed and thorough descriptions contained in the *Vaughn* index that constituted the bulk of the Bradbury Declaration. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plf's Opp.") at 6-7. While Plaintiff acknowledges that, in addition to the *Vaughn* index accompanying the Bradbury Declaration, the declaration itself contains some minimal, additional information about the withheld records, that information is nothing more than boilerplate. The declaration does not address any of the withheld records individually, and even the combination of the text of the declaration and the accompanying *Vaughn* index fails to describe any of the withheld records at issue as thoroughly or with as much detail as the single record described in the Kovakas Declaration.

      Record Nos. 238, 239, and 240 are illustrative. The *Vaughn* index accompanying the Bradbury Declaration describes these records as "E-mail(s) among OLC and OAG attorneys regarding preparation of the White Paper" and "E-mail between OLC attorneys regarding preparation of the White Paper (draft attached)." *See* Bradbury *Vaughn* Index at 17. The Bradbury Declaration asserts generically that the records being withheld from Plaintiff include "e-mails among various attorneys and officials in the Office, other components of the Department, and elsewhere in the Executive Branch generated while drafting documents and analyzing the TSP" and "the e-mails withheld in this case are characteristic of OLC e-mail use. All the messages relate to the preparation of draft documents, and most contain commentaries on discussions of the documents, including suggestions and opinions regarding the draft's content." *See* Bradbury Declaration at ¶¶12 and 19.

The text of the Bradbury Declaration, like its accompanying *Vaughn* index, fails to identify the author of any particular record, the author's specific title or position, the recipient of any particular record, or the recipient's specific title or position. Also like its accompanying *Vaughn* index, the text of the Bradbury Declaration fails to provide any detailed description of the specific role played by each record in the agency's deliberations, or whether, in fact, each record was ever disseminated outside the agency or to third parties or the public. Apparently, no effort was made to determine whether any record contains any segregable factual material. Also lacking is any additional meaningful information about records described in the accompanying *Vaughn* index only as "talking points" or "Attorney General speech." How and when were the talking points used? By whom? What speech?[3] In short, Plaintiff did not ignore the text of the Bradbury Declaration. Rather, the declaration simply failed to provide any additional, meaningful information that satisfies Defendant's burden of proving that the records at issue are being withheld properly. *See, e.g., Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252 (D.D.C. 2004) (Kennedy, J.).

### IV.     Plaintiff Did Not Misconstrue the Presidential Communications Privilege.

In its reply, Defendant asserts that Plaintiff misconstrued the law governing the presidential communications privilege, and, in particular, the ruling by the Hon. John D. Bates in *Lardner v. U.S. Department of Justice*, 2005 WL 758267, (D.D.C. 2005). Defendant is wrong again. At issue in *Lardner* was whether the President must invoke the presidential communications privilege personally in order to satisfy FOIA's Exemption 5. Far from

---

[3]     Defendant attempts to correct this obvious shortcoming by presenting new, albeit unsworn, factual information in its reply. *See* Reply at 9 n.5, 11 n.7, and 15.

misconstruing *Lardner*, Plaintiff expressly referenced the *Lardner* decision in its opposition. *See* Plf's Opp. at 15. Plaintiff argued, however, that this Court is not bound by Judge Bates' decision in *Lardner*, especially in light of clear holdings by the U.S. Supreme Court and the U.S. Court of Appeals for the District of Columbia Circuit in *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977), *U.S. v. Nixon*, 418 U.S. 683 (1974), and *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), among other binding precedent cited by Plaintiff in its opposition. With all respect to Judge Bates, *Lardner* has no binding, precedential effect on this Court.

Nor did Plaintiff cite *Judicial Watch, Inc. v. U.S. Department of Justice*, 365 F.3d 1108 (D.C. Cir. 2004) in support of the proposition that the presidential communications privilege must be invoked by the president personally. Plaintiff cited *Judicial Watch, Inc.* for the proposition that the privilege does not extend beyond the president's immediate inner circle of advisors.[4] *Id.* at 1123. In *Judicial Watch, Inc.*, the issue of whether the privilege must be invoked by the president personally had not been raised in the trial court. *Id.* at 1114. As a result, the Court in *Judicial Watch, Inc.* expressly declined to reach the issue of whether the president must invoke the privilege personally. *Id.*

V. **Defendant's New Information Still Does Not Satisfy Its Burden**.

In its reply, Defendant identifies, for the first time, several pending lawsuits and appeals that it claims purportedly justifies its assertion of the attorney work product doctrine. Reply at 16 n.10. Initially, Defendant cited only three pending lawsuits purportedly in support of its assertion

---

[4] In this regard, neither the Bradbury Declaration nor the accompanying *Vaughn* index identifies the "presidential advisors" to whom advice purportedly was given, making it impossible for either Plaintiff or the Court to determine whether the privilege applies. *See* Bradbury Decl. at ¶ 26.

of the attorney work product doctrine.  *See* Kovakas Declaration at ¶ 9.[5]  Other than the name of the lead plaintiff and defendant in each case, however, Defendant failed to provide any additional information about this litigation, including when and where it was filed, or any facts showing that specific claims had arisen and were likely to be pursued to the point of litigation at the time the record had been prepared.  *Id.*  Despite identifying additional lawsuits and appeals in its Reply, albeit not in any sworn format, Defendant stills fails to present any facts showing that any of the withheld records were prepared in anticipation of defending the government against any specific claims or any specific litigation.  Defendant's moving papers describe the withheld records as "talking points," responses to newspaper editorials, press questions, and opinions expressed by constitutional scholars, speeches and congressional testimony, congressional correspondence, including the "Moschella letter," and a "White Paper," among other items.  *See generally* Bradbury *Vaughn* Index; *see also* Bradbury Declaration at ¶ 23.  Defendant's own, albeit scant, descriptions of these records appear to belie any claim that the records were prepared in anticipation of litigation as that term is understood in the context of the attorney work product doctrine.  Rather than being prepared in anticipation of defending the government against civil rights claims in a court of law, it would appear that the withheld records were prepared to defend a controversial spy program in the court of public opinion.

## VI.  Conclusion.

If the government wishes to continue to withhold unclassified records about its response to the public revelation of the Terrorist Surveillance Program, it must satisfy its legal burdens

---

[5]     Again, the Kovakas Declaration concerns only one withheld record.  Defendant made no effort to identify any such litigation with respect to any of the other records at issue.

under FOIA. To date, it has largely failed to do so. Unless and until it does, summary judgment cannot be entered in its favor.

Dated: May 31, 2007 			Respectfully submitted,

JUDICIAL WATCH, INC.

/s/
Paul J. Orfanedes
D.C. Bar No. 429716
Jason B. Aldrich
D.C. Bar No. 495488
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172

*Attorneys for Plaintiff*