UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>                Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br>                Defendant. | Civil Action  06-00406  (HHK) |

MEMORANDUM OPINION AND ORDER

Judicial Watch, Inc. ("Judicial Watch") brings this action against the United States Department of Justice ("DOJ"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking access to various records related to the authority of the National Security Agency to monitor domestic communications without court-approved warrants.  DOJ seeks to withhold 294 documents or categories of documents under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  Before the court is DOJ's motion for summary judgment.  Upon consideration of the motion and the record of this case, the court grants the motion in part and denies it in part.

I. BACKGROUND

A.  Judicial Watch's FOIA request

On December 16, 2005, the *New York Times* reported that President Bush "secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying." James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 15, 2005.  In response to this news, Judicial Watch submitted

a FOIA request on January 6, 2006, to various DOJ departments, including the Office of Intelligence and Policy Review, the Office of Legal Counsel, and the Civil Division. Judicial Watch's request sought "any and all records concerning, relating to, or reflecting":

> (1) Any and all legal opinion(s) and/or memorandum(a) regarding the authorization by President George W. Bush for the National Security Agency (hereafter "NSA") to monitor domestic communications without court-approved warrants, referenced in the [December 15, 2005] *New York Times* story; and
> (2) a Presidential order signed in 2002 allowing and/or instructing the NSA to monitor domestic communications without court-approved warrants, referenced in the [December 15, 2005] *New York Times* story.

Judicial Watch filed this lawsuit after DOJ failed to respond to the request as Judicial Watch believes the law requires. DOJ made several subsequent productions between June and October 2006. However, Judicial Watch contends that DOJ's production is not complete, and that DOJ continues to withhold responsive documents.

The issue before the court is DOJ's decision to withhold 294 unclassified documents or categories of documents[1] totaling approximately 4,760 pages. Of these documents, the Office of Intelligence and Policy Review is withholding one, the Civil Division is withholding one, and the Office of Legal Counsel is withholding the remaining documents.

## II. ANALYSIS

DOJ argues that all 294 documents are properly withheld pursuant to Exemption 5. DOJ asserts that all of the documents are subject to the deliberative process privilege, that 258 documents are also subject to the attorney work product privilege, and that three are also subject

---

[1] For ease of reference, the court will hereinafter omit the phrase "categories of documents" when referring to the documents withheld by DOJ.

to the presidential communications privilege.[2]  Judicial Watch argues that DOJ does not provide enough information about the documents to enable the court to determine whether any of the privileges apply.[3]  Judicial Watch also asserts that the presidential communications privilege does not apply because the President must personally invoke the privilege and because it extends only to advice solicited and received by the President's senior advisors.  Lastly, Judicial Watch asserts that DOJ does not explain whether there is any reasonably segregable information in the documents.

### A. Summary judgment standard

In a FOIA case, the court may award summary judgment when the affidavits, declarations, and/or *Vaughn* Index[4] describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 725, 738

---

[2] DOJ also argues that some documents are properly withheld pursuant to Exemption 6, U.S.C. § 552(b)(6), which protects information that cannot be disclosed without resulting in an unwarranted invasion of personal privacy.  Such documents include the names of third-party individuals,  government agency staff members, as well as their personal information. Judicial Watch concedes that such documents are properly withheld.  However, DOJ does not identify the particular documents exempt under Exemption 6.  Thus, to the extent DOJ's motion for summary judgment with respect to these documents is based on Exemption 6, the motion is denied.

[3] Judicial Watch concedes that DOJ provides enough information about the one document withheld by the Civil Division. Therefore, the court grants summary judgment to DOJ with respect to this document.

[4] While there is no set formula for a "*Vaughn* Index," a prototypical index generally describes each withheld document, states which exemption the agency claims for each withheld document, and explains the exemption's relevance. *People for the American Way Foundation. v. U.S. Dep't of Education*, 516 F. Supp. 2d. 28, 34 (D.D.C. 2007).

(D.C. Cir. 1981). "[C]onclusory assertions of privilege will not suffice." *Senate of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574, 585 (D.C. Cir. 1987) (*quoting Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980)). The agency withholding documents has the burden of establishing its right to withhold documents. *Id.*[5]

### B. Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses the three privileges that DOJ asserts here: the deliberative process privilege, the attorney work product privilege, and the presidential communications privilege.

#### 1. Deliberative process privilege

DOJ asserts that all of the withheld documents are exempt from disclosure pursuant to the deliberative process privilege. The deliberative process privilege shields from disclosure records the government demonstrates to be both "predecisional," that is, "generated before the adoption of an agency policy," and "deliberative," that is, "reflect[ive][of] the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. Thus, to invoke the deliberative process privilege, an agency must (1) identify the deliberative process at issue[6] and (2) identify the role

---

[5] To support its argument that it properly withheld documents pursuant to Exemption 5, DOJ submits: (1) the affidavit of Steven G. Bradbury, the Acting Assistant Attorney General for the Office of Legal Counsel ("Bradbury Affidavit"); (2) a *Vaughn* Index supplementing the Bradbury Affidavit; (3) the affidavit of James Kovakas, the Attorney-in-Charge of the Freedom of Information and Privacy Acts Office, Civil Division ("Kovakas Declaration"); and (4) the affidavit of James Baker, Counsel for Intelligence Policy at the Office of Intelligence Policy and Review ("Baker Affidavit").

[6] An agency does not need to "point to an agency final decision" so long as the agency can identify a deliberative process at issue. *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000).

4

that the documents at issue played in the deliberative process. *See Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000). Additionally, the agency must provide "specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977). Accordingly, without sufficiently specific affidavits and/or a *Vaughn* Index, a court cannot determine whether documents are covered by the deliberative process privilege.

The documents withheld pursuant to the deliberative process privilege fall into the following three categories: (1) internal communications (*e.g.* e-mails and faxes); (2) drafts; and (3) handwriting and notes.[7] Judicial Watch only challenges the withholding of the documents in the first two categories.[8]

### a. Internal communications

DOJ withholds numerous internal communications, such as e-mails, faxes, and internal memoranda. DOJ argues that these communications are subject to the deliberative process privilege because they reflect the exchange of ideas that accompany DOJ's decision-making processes, and releasing these materials would chill the free flow of opinions within the Executive Branch.

Judicial Watch argues that DOJ neither sufficiently identifies the deliberative processes to which these communications contributed nor the role of these communications in the various

---

[7] There are four documents that do not fall into these three categories. These are Doc. Nos. 27, 36, 38, and 39. The court finds that DOJ does not sufficiently justify why the deliberative process or work product privilege applies to these documents.

[8] Judicial Watch concedes summary judgment to DOJ with respect to the following documents in the third category: Doc. Nos. 3-5, 7-8, 10-11, 13, 16, 18-20, 28, and 284.

deliberative processes. Judicial Watch's arguments are well taken.[9] It is not enough under FOIA to simply state that documents contain deliberative information. *See Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973).

DOJ does not identify the deliberative processes at issue in many of the withheld communications. In *Coastal States*, 617 F.2d at 861, the court rejected as "patently inadequate" a *Vaughn* Index entry that described a memorandum as containing "[a]dvice on audit of reseller whether product costs can include imported freight charges, discounts, or rental fees." DOJ's document descriptions are even more inadequate. For example, DOJ states that numerous e-mails discuss "talking points," but DOJ does not identify the subject matter of the talking points. *E.g.* Doc. Nos. 48-49. DOJ also states that some e-mails address "press inquir[ies]" but does not identify the subject of the inquiries. *E.g.* Doc. Nos. 62-63. Considering that the D.C. Circuit has stated that "the briefest references to its subject matter . . . will not do," *Senate of Puerto Rico,* 823 F.2d at 585, DOJ's complete failure to identify the subject matter of the internal communications certainly will not do.[10]

Even where DOJ identifies the deliberative process at issue, DOJ often fails to explain the role of the internal communications in the deliberative process. For example, DOJ describes numerous communications as "[e]mail[s] between OLC attorneys regarding preparation of White

---

[9] The court, however, finds that DOJ provided this information for Doc. Nos. 15 and 134. But because DOJ does not sufficiently explain why these documents do not contain any reasonably segregable information, as discussed *infra* section II C, DOJ's motion for summary judgment with respect to these documents is denied.

[10] DOJ argues that Judicial Watch's assertion that it is unable to determine the "subject matter" of the withheld documents is specious because all documents related to the subject matter of Judicial Watch's FOIA request – documents concerning NSA's authority to monitor domestic communications. The court disagrees with DOJ. Judicial Watch's FOIA request is relatively broad and encompasses various subjects, and DOJ must identify the subjects with as much specificity as possible.

Paper."[11]  *E.g.* Doc. Nos. 171-172.  While the court understands that the deliberative process at issue is the preparation of the White Paper, it is not clear how these e-mails contributed to the preparation of the White Paper.  DOJ must provide this missing information.[12]

### b. Drafts

Judicial Watch also challenges DOJ's withholding of drafts.  DOJ argues that drafts can be withheld because drafts, by their very nature, are pre-decisional and deliberative.  Judicial Watch argues that simply labeling documents as "drafts" is insufficient; DOJ must explain the deliberative processes in which these drafts were involved.  The court agrees with Judicial Watch.

For example, DOJ describes one document as a "draft of Attorney General testimony." Doc. No. 292.  DOJ neither identifies the subject matter of the testimony nor provides any explanation of how a particular draft assisted the process of compiling the Attorney General's testimony, however.  If DOJ persists in its withholding of drafts, it must provide the court with this missing information.  However, DOJ does sufficiently identify the deliberative process for which some drafts were created, such as Doc. No. 280, which was created as part of the process of drafting of the White Paper.[13]

---

[11] The "White Paper" refers to DOJ's January 19, 2006 paper entitled "Legal Authorities Supporting the Activities of the National Security Agency Described by the President."  The "Moschella Letter" refers to a December 22, 2005 letter from the Acting Assistant Attorney General William P. Moschella to various members of Congress.  Bradbury Aff. ¶ 13.

[12] DOJ provides this missing information with respect to some documents.  For example, in the Kovakas Declaration, DOJ describes the role of an e-mail in the deliberative process by stating that it contains "comments on a draft of the White Paper," and "raises a possible issue to be considered before the White Paper is finalized."  DOJ must similarly identify the deliberative process at issue in all the withheld internal communications, as well as the role that the internal communications played in the process.

[13] The other drafts for which DOJ sufficiently identifies the relevant deliberative process include Doc. Nos. 30, 31, 34-35, 41, 279-281, 286, and 289.  However, because DOJ does not

**2. Attorney work product privilege**

DOJ asserts that 258 of the withheld documents are also exempt from disclosure pursuant to the attorney work product privilege. This privilege protects disclosure of materials prepared in anticipation of litigation. *In re Sealed Case*, 146 F.2d 881, 884 (D.C. Cir. 1998). The privilege is limited in scope. It does not apply to "every written document generated by an attorney." *Senate of Puerto Rico*, 823 F.2d at 586. Nor does it extend to documents prepared for some purpose other than litigation. *In re Sealed Case*, 146 F.3d at 887 ("the privilege has no applicability to documents prepared by lawyers 'in the ordinary course of business or for other nonlitigation purposes'"); *Coastal States*, 617 F.2d at 865 ("the mere possibility [of litigation] is hardly tangible enough to support so broad a claim of privilege"). Nor does the privilege apply if the work product is disclosed to a third party. *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982).

Judicial Watch argues that DOJ cannot invoke the work product privilege because DOJ neither identifies the specific claims nor the litigation for which the documents were created. Judicial Watch also contends that DOJ does not present any facts showing that the documents were prepared in anticipation of litigation. DOJ argues that it does not have to identify specific litigation and that it satisfactorily shows that the documents were prepared in contemplation of litigation.

The court agrees with DOJ that, to invoke the work product privilege, DOJ does not have to point to specific claims or litigation. In *In re Sealed Case*, the D.C. Circuit specifically rejected the notion that documents must be prepared in anticipation of a specific claim or

---

sufficiently explain why there is no reasonably segregable information in these documents, as discussed *infra* Section II C, DOJ's motion for summary judgment with respect to these documents is denied.

litigation. 146 F.3d at 885-87. So long as a lawyer is providing legal advice to protect a client from future litigation or to strengthen a client's defense in future litigation, the attorney's work is protected by the work product privilege. *Id.*

However, DOJ does not sufficiently show that any of the withheld documents were prepared in contemplation of litigation. DOJ asserts work product privilege over a diverse group of documents, including drafts of the White Paper and the Moschella Letter,[14] "draft responses to congressional questions,"[15] "draft of Attorney General testimony," and "draft talking points."[16] The Bradbury Affidavit broadly states that all these documents were prepared in anticipation of litigation. The court is hard pressed to understand how this is so.

Documents ordinarily accorded work product protection often contribute to the analysis of legal and factual claims and defenses – these documents appear to be simply drafts of documents that are later publicly released and e-mails and faxes discussing these drafts. The D.C. Circuit has admonished that work product protection cannot be granted to *every* document drafted by an attorney, nor can this protection be granted to documents created for purposes other than litigation. *See, e.g., Senate of Puerto Rico,* 823 F.2d at 586. Consequently, to the extent DOJ's motion for summary judgment with respect to the 258 documents is based upon a claim of exemption for attorney work product, the motion is denied. Any subsequent motion for summary judgment with respect to any documents withheld under a claim of attorney work product must

---

[14] *E.g.* Doc. Nos. 280, 289.

[15] *E.g.* Doc. No. 23.

[16] *E.g.* Doc. No. 21.

be supported by a *Vaughn* Index and affidavits that provide a detailed explanation of how the privilege applies to such documents.[17]

### 3. Presidential communications privilege

DOJ asserts that three documents (Doc. Nos. 59, 68, and 130) are properly withheld pursuant to the presidential communications privilege. Judicial Watch argues that the privilege must be personally invoked by the President. Judicial Watch further argues that the privilege applies only to documents that are solicited and received by the President's *senior* advisors, and that DOJ does not specify whether the advisors who solicited and received the documents are sufficiently senior to qualify for the privilege. DOJ argues that the President does not need to personally invoke the privilege and that the privilege applies so long as the documents are solicited as part of a presidential decision-making process.

The court agrees with DOJ that the President does not need to personally invoke the privilege. There is no indication in the text of FOIA that the decision to withhold documents pursuant to Exemption 5 must be made by the President. *Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, *8 (D.D.C. Mar. 31, 2005).

The court rejects DOJ's argument that the privilege applies so long as the documents are solicited as part of a presidential decision-making process, however. In *Judicial Watch v. U.S. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004), the court cautioned against "the dangers of

---

[17] Judicial Watch asserts that DOJ has the burden of demonstrating that DOJ did not waive the work product doctrine by disclosing the withheld documents to third parties. The court observes that, in this jurisdiction, it is ordinarily the case that a FOIA requester must demonstrate that there has been a prior disclosure. *See, e.g., Afshar v. Dep't of State*, 702 F.2d 1125, 1129 (D.C. Cir. 1983) ("a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld").

expanding [the privilege] too far." *Id.* at 1115. The D.C. Circuit has only provided for a "limited" extension of the privilege "down the chain of command" to the President's "immediate White House advisors" and their staff. *Id.* at 1115-16. Thus, "[n]ot every person who plays a role in the development of presidential advice. . . can qualify for the privilege." *Id.* (*citing In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)).

Accordingly, the presidential communications privilege applies to the three documents at issue only if they were solicited or received by immediate or key advisors to the president. *Id.* at 1116. The *Vaughn* Index states that the three documents at issue were either sent by or received by White House attorneys. So long as these attorneys are "members of an immediate White House adviser's staff who ha[s] broad and significant responsibility for investigating and formulating the advice to be given the President," the privilege will apply. *In re Sealed Case*, 121 F.3d at 752. However, DOJ does not provide enough information about the attorneys to enable the court to determine whether the privilege applies.

### C. Segregability

The documents withheld by DOJ are withheld in their entirety. An agency that withholds documents in their entirety has the burden of showing that the documents contain no "reasonably segregable" factual information. *Electronic Privacy Info. Center v. U.S. Dep't of Justice,* 511 F. Supp. 2d 56, 64 (D.D.C. 2007). Judicial Watch argues that DOJ does not adequately explain why it cannot segregate out factual information from the withheld documents and that DOJ must release those portions of its draft documents that were ultimately released to the public. DOJ argues that it does not have to release any of its drafts because all but three are subject to the work product privilege, which protects documents in their entirety.

The court agrees with DOJ that, to the extent that drafts are protected by the work product privilege, DOJ does not have to release them. *Tax Analysts v. I.R.S.,* 294 F.3d 71, 76 (D.C. Cir. 2002) (affirming district court decision that documents could be withheld in their entirety pursuant to the work product privilege). However, as discussed *supra*, DOJ has not shown that any of the documents are protected by the work product privilege. Thus, the court cannot determine whether DOJ can properly withhold them in their entirety.

Aside from arguing that the drafts are properly withheld in their entirety under the work product privilege, DOJ also argues that none of the drafts contain segregable information because they "overwhelmingly reflect . . . deliberations concerning legal arguments . . . not factual material." Def's Reply 14. This language is too vague and expansive for the court to determine whether the documents contain segregable information. *Electronic Privacy Info. Center*, 511 F. Supp. 2d at 70 (finding that descriptions of documents were "vague and expansive" and thus court was not in position to determine segregability). Furthermore, DOJ does not explain why any documents *other* than the drafts do not contain reasonably segregable information.

## III. CONCLUSION

For the reasons set forth above, it is this 20th day of March 2008, hereby

**ORDERED** that DOJ's motion for summary judgment is **GRANTED** with respect to the document withheld by the Civil Division and Doc. Nos. 3-5, 7-8, 10-11, 13, 16, 18-20, 28, and 284; and it is further

**ORDERED** that DOJ's motion is **DENIED** in every other respect; and it is further

**ORDERED** that by no later than April 21, 2008, the parties shall submit a joint proposed case management plan and briefing schedule to govern the future proceedings in this case.

Henry H. Kennedy, Jr.,<br>
United States District Judge