# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUDICIAL WATCH, INC.**, <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF JUSTICE,** <br> **Defendant.** | **Civil Action 06-00406  (HHK)** |

### MEMORANDUM OPINION AND ORDER

Plaintiff Judicial Watch, Inc. brought this action against the U.S. Department of Justice ("DOJ"), seeking the release of certain records related to the government's Terrorist Surveillance Program pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. On March 3, 2010, after DOJ had released a number of documents and withheld others under FOIA's various exemptions, the parties submitted a joint stipulation of dismissal [#29]. Judicial Watch subsequently filed a motion for attorney fees [#30], which DOJ opposes. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted.

### I.  BACKGROUND

On January 6, 2006, Judicial Watch filed a FOIA request with DOJ, seeking legal opinions, orders, and other documents related to the Terrorist Surveillance Program, a domestic surveillance initiative authorized by President George W. Bush in 2002. On March 6, having received no response from DOJ, Judicial Watch initiated this action. Thereafter, the parties

jointly stipulated that: (i) DOJ would complete its production of documents by September 15, 2006; (ii) DOJ would produce a *Vaughn* index of all records withheld from Judicial Watch by October 13, *see Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973); and (iii) by October 31, Judicial Watch would notify DOJ whether it intended to challenge any withholdings and if so, which ones. *See* Joint Stipulation [#7] ¶¶ 1–3. The Court accepted the parties' stipulation by minute order. *See* Minute Order of Aug. 7, 2006.

After the agreed-upon steps were completed, DOJ moved for summary judgment as to its withholding of 294 documents pursuant to FOIA's Exemption Five. Def.'s Mem. in Supp. of Summ. J. [#9]; *see* 5 U.S.C. § 552(b)(5) (protecting "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency [sic] in litigation with the agency."). The Court granted the motion for summary judgment as to fifteen documents that Judicial Watch conceded could be withheld, but denied it in all other respects, concluding that DOJ had failed to adequately explain why the remaining documents were exempt from disclosure and why certain documents contained no segregable information. *See* Mem. Op. & Order of March 20, 2008 [#19] at 13. After the Court's ruling, the parties engaged in further negotiations that resulted in DOJ's release of 68 more documents and then the dismissal of the case. Judicial Watch then moved for attorney fees.

## II. ANALYSIS

A FOIA plaintiff is eligible to receive "reasonable attorney fees and other litigation costs" if she has "substantially prevailed" in the case in question. 5 U.S.C. § 552(a)(4)(E)(i). If eligible, a plaintiff must also show that she is "entitled" to a fee award; only then will she be

granted fees and costs. *See Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008). Because eligibility is a threshold requirement, the Court turns first to that issue.

**A.     Judicial Watch "Substantially Prevailed" in this Action**

**1.     The Court Need Not Determine Which "Substantially Prevailed" Standard to Apply**

The "substantially prevailed" requirement presents an unusual complication here because its meaning changed during the pendency of this action. From 2001 through 2007, "in order for plaintiffs in FOIA actions to become eligible for an award of attorney fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy* ("*OCAW*"), 288 F.3d 452, 456–57 (D.C. Cir. 2002) (alteration in original) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). On the last day of 2007, however, the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (2007), took effect. Under the OPEN Government Act, a FOIA plaintiff has substantially prevailed if she has obtained relief from a court as described above *or* via "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The act's "voluntary or unilateral change" language reinstated the "catalyst" test for fee eligibility, which had been rejected by the Supreme Court in *Buckhannon*. *See* 532 U.S. at 610.

As a result of this mid-litigation change in the governing law, the parties dispute which standard the Court should apply: the catalyst test (which took effect while this case was pending) or the stricter *Buckhannon* test (which was in effect when the case was filed). The Court

3

concludes, however, that it need not resolve that question because even under the stricter *Buckhannon* test, Judicial Watch has substantially prevailed.

> **2. Judicial Watch Has Obtained Relief Through "a Judicial Order, or an Enforceable Written Agreement or Consent Decree"**

The *Buckhannon* test requires a plaintiff to have "obtained relief through . . . a judicial order, or an enforceable written agreement or consent decree." 5 U.S.C. § 552(a)(4)(E); *see OCAW*, 288 F.3d at 455–57. Judicial Watch points to two actions of this Court that ostensibly awarded relief to Judicial Watch in the necessary fashion: first, the Court's August 7, 2006 acceptance of the parties' joint stipulation; and second, the Court's March 20, 2008 partial grant and partial denial of DOJ's motion for summary judgment. DOJ responds that neither event constituted an award of relief on the merits of Judicial Watch's FOIA claim. The Court concludes that Judicial Watch substantially prevailed by virtue of the Court's August 2006 acceptance of the parties' joint stipulation.

The Court's minute order of August 7, 2006 stated that the Court "approves of the parties' stipulations . . . and the parties shall be governed by the deadlines set forth therein." Minute Order of August 7, 2006. The stipulation in question read: "On or before September 15, 2006, DOJ shall complete production of all records responsive to Plaintiff's January 6, 2006 Freedom of Information Act request that are not subject to claims of exemption." Joint Stipulation ¶ 1. Judicial Watch asserts that the Court's adoption of the stipulation constituted a judicial award of relief on the merits; DOJ counters that the Court's minute order was merely procedural. DOJ's response is unavailing.

In the aptly titled *Judicial Watch*, 522 F.3d 364, the D.C. Circuit held that the plaintiff had prevailed because "the parties had stipulated that the defendant agency would produce the requested records by a date certain and the trial court approved the parties' joint stipulation." *Id.* at 368 (internal quotation marks omitted). The *Judicial Watch* court found the case before it to be a close parallel to *Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006), which similarly held that the plaintiff had prevailed on the basis of a joint stipulation, approved by the district court, that the defendant would provide "all responsive documents, if any," by certain dates. *Id.* at 164 (quoting *Davy v. CIA*, No. 00-02134 (D.D.C. May 17, 2001)). In *Judicial Watch*, as in *Davy*, the D.C. Circuit emphasized that "[p]rior to the parties' joint stipulation and order, . . . '[the defendant] was not under any judicial direction to produce documents by specific dates; the . . . order changed that by requiring the [defendant] to produce all responsive documents by the specified dates.'" *Judicial Watch*, 522 F.3d at 367–68 (quoting *Davy*, 456 F.3d at 166); *see also Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 197 (D.C. Cir. 2007); *Edmonds v. FBI*, 417 F.3d 1319, 1321–23 (D.C. Cir. 2005).

The Court's August 7, 2006 minute order fits squarely within the holdings of these cases. The parties' stipulation, which the minute order approved, required DOJ to "complete production" of responsive, non-exempt records by a certain date. *See* Joint Stipulation ¶ 1. The stipulation's language is functionally indistinguishable from that in *Davy*, where the stipulation, approved by the district court, stated that the defendant would provide "all responsive documents, if any," by certain dates. *Davy*, 456 F.3d at 164 (quoting *Davy v. CIA*, No. 00-02134 (D.D.C. May 17, 2001)) (internal quotation marks omitted). As in *Judicial Watch* and *Davy*, this Court's minute order "requir[ed] the [defendant] to produce all responsive documents by the

5

specified dates." *Judicial Watch*, 522 F.3d at 367–68 (quoting *Davy*, 456 F.3d at 166) (internal quotation marks omitted).

DOJ's response — that the Court's order was merely procedural because it did not rule on the merits of Judicial Watch's claim — is an argument that the D.C. Circuit has repeatedly rejected. DOJ's argument is based on *OCAW*, in which the D.C. Circuit held that an order requiring the defendant to "complete its record review in 60 days" could not serve as the basis for a determination that the plaintiff had prevailed, because the order neither created an obligation to turn over any specific documents nor rejected the defendant's justifications for withholding any information. *See OCAW*, 288 F.3d at 458–59. In a vacuum, DOJ's reading of *OCAW* would be reasonable, but *Davy*, *Campaign for Responsible Transplantation*, and *Judicial Watch* all expressly considered and rejected such a reading. *See Judicial Watch*, 522 F.3d at 369–70 (describing the government's repeated deployment of this argument). The *Judicial Watch* court went so far as to observe that "the government's decision to dust off a thoroughly discredited argument and present it to us anew wastes both our time and the government's resources." *Id*. at 370. This Court will follow the clear holdings of these binding precedents. Accordingly, the Court concludes that Judicial Watch substantially prevailed by virtue of the Court's August 7, 2006 minute order.[1]

---

[1] Because the Court concludes that Judicial Watch substantially prevailed by virtue of the Court's August 7, 2006 minute order, it does not separately consider the effect of its partial denial of DOJ's summary judgment motion. *See Edmonds*, 417 F.3d at 1327 (where a FOIA plaintiff has substantially prevailed as to one issue, it is not necessary to consider whether she also substantially prevailed as to others).

**B.      Judicial Watch Is Entitled to an Award of Attorney Fees**

Once a FOIA plaintiff has established that she is eligible for attorney fees, she must next establish that she is entitled thereto. To determine whether a plaintiff is entitled to receive a fee award, the court balances four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Judicial Watch*, 522 F.3d at 371 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)) (internal quotation marks omitted). The "commercial benefit" and "plaintiff's interest" factors are closely related and are often considered together. *Tax Analysts*, 965 F.2d at 1095. Upon considering all of the factors, the Court concludes that Judicial Watch is entitled to receive a fee award.

**1.      Public Benefit**

The public-benefit factor weighs in favor of granting attorney fees "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)) (internal quotation marks omitted). Judicial Watch avers that the material it sought, which was related to the government's controversial Terrorist Surveillance Program, is precisely the sort of information that is valuable to the public in making such choices. The Court agrees.

In *Electronic Privacy Information Center v. Department of Justice*, 416 F. Supp. 2d 30 (2006), this Court noted "the great public and media attention that the government's warrantless surveillance program has garnered." *Id*. at 42. Indeed, the Terrorist Surveillance Program has been the subject of legislative inquiry, *see* David Stout, *Defense of Eavesdropping Is Met With*

7

*Skepticism in Senate*, N.Y. TIMES, Feb. 6, 2006, and significant litigation. *See, e.g.*, *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60 (2d Cir. 2009), *cert. denied* 131 S. Ct. 387 (2010); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007). The dissemination of the information at issue is clearly in the public interest.

DOJ does not dispute that the information sought by Judicial Watch is useful to the public, but argues that any benefit the public has received from Judicial Watch's suit is largely negated by the fact that many of the requested documents were the subject of the earlier-filed FOIA claim in *Electronic Privacy Information Center*. This response is unavailing. Although the court must consider "the extent to which the information released [in a FOIA suit] is already in the public domain," *Nw. Coal. for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 64 (D.D.C. 1997), the defendant bears the burden of establishing that fact. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 111 (D.D.C. 2006). Conclusory assertions will not suffice. *See id*. (noting that "courts consistently require substantiation" of arguments that information is already publicly available). Further, it is not enough that some other private party has access to the material in question: "only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of [FOIA's] fee waiver provisions." *Campbell v. U.S. Dep't Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998). Because DOJ has made no effort to show that the information contained in the records at issue here has reached that level — or any level — of public dissemination, the Court finds that this factor weighs in favor of Judicial Watch, albeit with somewhat less force than if none of the documents requested had been released before.

### 2. Commercial Benefit and Nature of Interest

The second and third eligibility factors hold that "when a [FOIA] litigant seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate." *Tax Analysts*, 965 F.2d at 1095. Here, Judicial Watch argues that its purpose — to obtain and disseminate information of interest to the public — is entirely non-commercial and public-oriented and thus favors an award of fees. The Court finds this argument, to which DOJ does not respond, persuasive. *See U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495–96 (1994) (describing FOIA's core purpose of contributing to the public understanding of the operations or activities of government); *cf. Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 384 F. Supp. 2d 163, 168–69 (D.D.C. 2005) (finding the first three eligibility factors to weigh in Judicial Watch's favor in a FOIA suit), *rev'd in part on other grounds*, 470 F.3d 363 (D.C. Cir. 2006). Accordingly, these factors also weigh in favor of granting Judicial Watch a fee award.

### 3. Reasonableness of Agency Withholding

Finally, the reasonable-basis-in-law factor is "intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Tax Analysts*, 965 F.2d at 1097 (quoting *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977)). Here, Judicial Watch argues that DOJ's conduct was clearly obstructive because DOJ failed to respond to Judicial Watch's FOIA request by the statutory deadline, thus forcing Judicial Watch to commence this action. DOJ counters that the reasonableness of its conduct is evinced by the fact that Judicial Watch eventually dropped its claim to more than three quarters of the documents it originally requested. The Court agrees with

DOJ that its conduct *after* the commencement of the suit does not appear particularly unreasonable; it cannot agree, however, that DOJ's failure to respond to Judicial Watch's original request in a timely fashion was appropriate.

Judicial Watch sent its original request to DOJ on January 6, 2006. In three letters, dated January 11, 12, and 19, respectively, various DOJ components acknowledged receipt of Judicial Watch's request and granted it expedited processing. Even so, DOJ failed to provide a response to Judicial Watch within twenty business days as required by 5 U.S.C. § 552(A)(6)(a)(i). Even though DOJ's conduct after the suit was filed was generally reasonable, this initial failure to respond still weighs in favor of a fee award. *See Davy v. CIA*, 550 F.3d 1155, 1166 (D.C. Cir. 2008) (Tatel, J., concurring) (stating that the reasonableness-of-withholding factor's purpose "will be ill-served if the government can prevail on this factor by saying nothing and forcing the requester to sue, only then to offer no resistance" (internal quotation marks omitted)).

In sum: all four eligibility factors weigh, to varying degrees, in favor of granting a fee award here. Consequently, the Court will now turn to the amount of Judicial Watch's request.

## C.     The Amount of Fees to Which Judicial Watch is Entitled

FOIA provides that a plaintiff who is eligible and entitled may be awarded "*reasonable* attorney fees and other litigation costs." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added). The usual method of calculating a reasonable fee amount is to "multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). In turn, a reasonable hourly fee is determined "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*,

465 U.S. 886, 895 (1984). For public-interest or government lawyers who do not have customary billing rates, courts in this circuit have frequently employed the "*Laffey* Matrix," a schedule of fees based on years of attorney experience that was developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). *See Covington v. District of Columbia*, 57 F.3d 1101, 1105–11 (D.C. Cir. 1995) (noting the value of the *Laffey* matrix and affirming a fee award based in part on its use). Once the Court has determined the proper lodestar amount, it has discretion to adjust that amount on the basis of certain factors. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1499–1500 (D.C. Cir. 1984); *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1328–29 (D.C. Cir. 1982). The Court will first address Judicial Watch's rate calculations and hours expended.

1. **Rate Calculations and Hours Expended in Litigation**

Here, Judicial Watch used the *Laffey* Matrix to calculate the proper hourly rate for each of the attorneys and paralegals who worked on this case. *See* Pl.'s Mot. Ex. 1 at 7. Because DOJ does not dispute Judicial Watch's rate calculations, the Court will accept them. The Court further concludes that Judicial Watch's time entries are sufficiently clear and detailed to carry Judicial Watch's burden of establishing the reasonableness of its fee request. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).

DOJ, however, takes issue with the number of hours for which Judicial Watch seeks compensation. DOJ accuses Judicial Watch of failing to exercise "billing judgment" as described in *Hensley v. Eckerhart*, 461 U.S. 424 (1983):

> The district court . . . should exclude from th[e] initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or

11

> otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Id.* at 434 (internal citations omitted). The problem with DOJ's argument is that it fails to explain *why* any particular time entry is unreasonable. DOJ suggests that the time billed for Judicial Watch's opposition and surreply to DOJ's motion for summary judgment — 72.05 hours — "stand[s] out as particularly excessive." Def.'s Opp'n to Pl.'s Mot. at 15. DOJ's only argument in support of this claim is that these hours were billed "with no apparent reduction to indicate exercise of billing judgment." *Id*. But billing judgment is just that — *judgment*. The Supreme Court's command that district courts exclude hours that were not "reasonably expended" does not assume that all cases will necessarily have some particular proportion of hours that fall into that category. *See City of Riverside v. Rivera*, 477 U.S. 561, 569 n.4 (1986) ("*Hensley* requires a fee applicant to exercise 'billing judgment' not because he should necessarily be compensated for less than the actual number of hours spent litigating a case, but because the hours he does seek compensation for must be *reasonable*."). Further, as DOJ acknowledges, Judicial Watch *did* identify a number of billing items, albeit a small number, for which it would not request compensation. DOJ has thus failed to provide "specific countervailing evidence" that establishes the unreasonableness of any specific portion of Judicial Watch's request. *Piper v. U.S. Dep't of Justice,* 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326) (internal quotation marks omitted). Accordingly, the Court will not exclude any of the time entries for which Judicial Watch has requested compensation. *Cf. Ctr. to Prevent Handgun Violence v. U.S. Dep't of Treasury*, 49 F. Supp. 2d 3, 6 (D.D.C. 1999) (declining to reduce a fee award where, although several

attorneys expended a high number of hours for the plaintiff, the plaintiff had already reduced the amount somewhat and the defendant had failed to identify any duplicative or unproductive work).

### 2. DOJ's Proposed Lodestar Adjustment

Finally, DOJ suggests that the fee award should be adjusted downward by fifty percent to reflect the fact that Judicial Watch ultimately obtained less than one quarter of the documents it initially sought. DOJ does not explain why fifty percent would be a proper reduction. Judicial Watch does not respond to this argument.

DOJ is correct that, as a general matter, a "plaintiff's overall success on the merits . . . must be considered in determining the reasonableness of a fee award." *Judicial Watch v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley*, 461 U.S. at 434–35). In cases involving multiple discrete claims or issues that can be considered separately, this rule requires that hours spent on any unsuccessful claims be excluded from compensation. *Hensley*, 461 U.S. at 434–35. In cases where the plaintiff's suit cannot be divided into discrete claims on which the plaintiff has won or lost, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. Courts have termed this latter, holistic approach the "general reduction" method. *See McDonnell v. United States*, 870 F. Supp. 576, 588 (D.N.J. 1994) (collecting cases).

Here, DOJ suggests a general reduction of fifty percent to account for Judicial Watch's "limited degree of achievement in this case." Def.'s Opp'n at 14. DOJ provides no basis for its

13

fifty-percent figure.[2]  Moreover, DOJ's argument appears to neglect the fact that FOIA cases routinely result in the disclosure of a relatively small proportion of the documents originally requested.  Because a FOIA plaintiff cannot know at the outset which documents are subject to exemptions and which are not, the normal FOIA litigation process requires the plaintiff to request a broad swath of material, which will then be winnowed until the agency has released all non-exempt records.  *See, e.g.*, *Pub. Citizen Health Research Grp. v. Nat'l Inst. of Health*, 209 F. Supp. 2d 37, 40 (D.D.C. 2002) (noting that "in the typical FOIA case, some of Plaintiff's initial requests [are] voluntarily withdrawn and others [are] satisfied by the agency").  That is what occurred here.  More importantly, DOJ has neither suggested nor provided support for a conclusion that Judicial Watch's overall effort expended or requested lodestar amount are unusual for a FOIA case in this district or of similar complexity.  *Cf. Ashton v. Pierce*, 580 F. Supp. 440, 443 (D.D.C. 1984) (reducing a requested fee award because it was "clear that what was an essentially straightforward lawsuit has been allotted a disproportionate amount of time").

In light of DOJ's failure either to identify any discrete issues as to which Judicial Watch was unsuccessful, *see Judicial Watch*, 470 F.3d 370–71, or to establish that the "overall relief obtained" was disproportionate "to the hours . . . expended on the litigation," the Court concludes that DOJ has not carried its burden of establishing that a departure from the lodestar is appropriate.  *See Copeland v. Marshall*, 641 F.2d 880, 892 (D.C. Cir. 1980) ("The burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation.").

---

   [2]   DOJ properly eschews basing its proposed reduction on the ratio of released documents to withheld documents; the *Hensley* Court explained that such a mechanical approach would "provide[] little aid in determining what is a reasonable fee in light of all the relevant factors."  *Hensley*, 461 U.S. at 435 n.11.

Accordingly, the Court will award Judicial Watch the full lodestar amount: $26,601.25. Further, because DOJ has not challenged Judicial Watch's entitlement to $250.00 in litigation costs (the filing fee for this action), the Court will award Judicial Watch that amount as well. *See* 5 U.S.C. § 552(a)(4)(E)(i) (allowing courts to award "fees and other litigation costs").

### III. CONCLUSION

Judicial Watch has established that it is both eligible for and entitled to an award of attorney fees in this case. Further, it has provided documentation that is sufficiently detailed and clear to allow the Court to assess the reasonableness of the hours it has expended and the rates at which it requests compensation. Finally, DOJ has failed to justify a departure from the lodestar amount either by identifying discrete issues on which Judicial Watch did not prevail or by establishing that Judicial Watch expended more hours than were reasonable in light of the overall relief obtained.

Accordingly, it is this 31st day of March 2011 hereby

**ORDERED** that DOJ shall pay Judicial Watch attorney fees in the amount of $26,601.25 and litigation costs in the amount of $250.00.

Henry H. Kennedy, Jr.
United States District Judge